UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
UNITED STATES OF AMERICA            :            S4 10 Cr. 162 (KMW)

     - against -            :

SABIRHAN HASANOFF, et al.,            :

            Defendant.            :
-------------------------------------------------------X


### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
### SABIRHAN HASANOFF'S PRE-TRIAL MOTIONS


LINDA MORENO                                JOSHUA L. DRATEL
LINDA MORENO, P.A.                          JOSHUA L. DRATEL, P.C.
P.O. Box 10985                              2 Wall Street
Tampa, FL 33679                             3rd floor
(813) 247-4500                              New York, New York 10005
                                            (212) 732-0707


AHMED GHAPPOUR                              DAVID A. RUHNKE
LAW OFFICES OF AHMED GHAPPOUR              RUHNKE & BARRETT
P.O. Box 20367                              47 Park Street
Seattle, WA 98102                          Montclair, New Jersey 07042
(415) 598-8605                             (973) 744-1000


*Attorneys for Defendant Sabirhan Hasanoff*


 – Of Counsel –

Joshua L. Dratel
David A. Ruhnke
Linda Moreno
Ahmed Ghappour
Lindsay A. Lewis

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

POINT I

COUNT TWO SHOULD BE DISMISSED BECAUSE IT
FAILS TO STATE AN OFFENSE UNDER 18 U.S.C. §2339B,
AND/OR IS UNCONSTITUTIONALLY VAGUE AS APPLIED . . . . . . . . . . . . . . . . . . . . . . . 3

A.  *The "Material Support" Statutes – 18 U.S.C. §§2339A & B*  . . . . . . . . . . . . . . . . . . . . . 4

B.  *The Applicable Law Regarding Challenges to the Sufficiency of an Indictment* . . . . . . . 4

C.  *Count Two Must Be Dismissed Because It Fails to Allege Two Essential Elements
    of 18 U.S.C. §2339B: That the "Material Support" Alleged Was Provided to an
    FTO, and That Mr. Hasanoff Possessed the Requisite* Mens Rea *for the Offense*  . . . . . . 5

    1.  *The Material Support Must Be Provided to an FTO, Not Merely to Individuals*  . 5

    2.  *Count Two Should Also Be Dismissed Because It Fails to Allege
        the* Mens Rea *Necessary to Prove a Violation of 18 U.S.C. §2339B*  . . . . . . . . . . 6

D.  *If the Indictment Is Deemed Sufficient, §2339B Would Be
    Unconstitutional As Applied to Mr. Hasanoff In This Case*  . . . . . . . . . . . . . . . . . . . . . 7

    1.  *The Standards Governing Vagueness Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . 7

    2.  *§2339B Is Unconstitutionally Vague As Applied In This Case* . . . . . . . . . . . . . 10

POINT II

REFERENCE TO "PHYSICAL ASSETS" IN COUNT ONE
SHOULD BE STRICKEN FROM THE INDICTMENT BECAUSE
(1) "PHYSICAL ASSETS" ARE OUTSIDE THE DEFINITION OF
"MATERIAL SUPPORT" UNDER 18 U.S.C. §2339A(b); AND/OR (2)
18 U.S.C. §2339B IS UNCONSTITUTIONALLY VAGUE AS APPLIED . . . . . . . . . . . . . . . 10

i

A.    *The Term "Physical Assets" Must Be Stricken from Count One Because It Is Not Included in §2339A(b) among the Enumerated Forms of "Material Support"* . . . . 11

    1.    *The Definition of "Material Support"* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    2.    *The Applicable Law Regarding Challenges to An Indictment* . . . . . . . . . . . . . . 12

    3.    *Any Reference to the Provision of "Physical Assets" As a Form of "Material Support" Must Be Stricken from Count One* . . . . . . . . . . . . . . . . . 12

B.    *The Definition of "Material Support or Resources" In Count One Is Unconstitutionally Vague As Applied to Mr. Hasanoff* . . . . . . . . . . . . . . . . . . . . 13

POINT III

THE GOVERNMENT SHOULD BE COMPELLED TO ELECT
FROM COUNTS ONE, TWO, THREE, OR FOUR, OR THEY
SHOULD BE DISMISSED, ON THE GROUND OF MULTIPLICITY  . . . . . . . . . . . . . . . . . . 14

A.    *The Applicable Law and Principles Governing the Multiplicity of Charges Arising Under Two Separate Statutes* . . . . . . . . . . . . . . . . . . . . 15

B.    *The Court Should Dismiss Counts Three and Four on Grounds of Multiplicity* . . . . . . . 16

    1.    *The Offenses Charged in Counts One and Two Are Lesser-Included Offenses of Those in Counts Three and Four, Respectively*  . . . . . . . . . . . . . . . 17

    2.    *§2339B's Legislative History Supports the Presumption That It Was Not Intended to Impose Punishment Cumulative to That Imposed for IEEPA* . . . . . . 19

C.    *Applicable Law Governing Multiplicity of Charges Arising from the Same Statute* . . . . 22

D.    *The Court Should Dismiss Portions of Count Two on Multiplicity Grounds*  . . . . . . . . 23

    1.    *Neither the Language of §2339B Nor Its Legislative History Evinces Any Congressional Intent to "Pyramid the Penalties" for Attempt and Conspiracy* . 24

    2.    *The Conspiracy Alleged in Count One Merges with the Alleged Attempt Charged in Count Two Because the Conspiracy Constitutes the Sole Evidence of the Attempt* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

E.  *Multiplicitous Counts in the Indictment Should Be Dismissed Because They Create Inherent Jeopardy for the Defendant* . . . . . . . . . . . . . . . . . . . . . . . 27

POINT IV

MR. HASANOFF RESPECTFULLY JOINS IN
THOSE MOTIONS BY HIS CO-DEFENDANT
THAT INURE TO MR. HASANOFF'S BENEFIT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Sabirhan Hasanoff, in support of his pre-trial motions:

I.      to dismiss Count Two of the Indictment because it fails to state an offense under 18 U.S.C. §2339B, as the Indictment (a) fails to allege essential elements of the offense – that the "material support" was provided to a Foreign Terrorist Organization (hereinafter "FTO"); and (b) fails to allege the statute's requisite *mens rea,* and/or because 18 U.S.C. §2339B is unconstitutionally vague as applied if those elements are deemed satisfied by the language of the Indictment;

II.     to strike from Count One the term "physical assets" because it is outside the statutory definition of "material support" and/or because 18 U.S.C. §2339B is unconstitutionally vague as applied in this case if that term is deemed within the ambit of the statute;

III.    to compel the government to elect among Counts One, Two, Three, and Four, on the ground of multiplicity, in that they allege a single offense in multiple counts; and

IV.     for leave to join in his co-defendant's motions to the extent they inure to his benefit.[1]

Accordingly, for the reasons set forth below, it is respectfully requested that the Court

---

[1] Mr. Hasanoff also reserves the right to file additional motions, including motions related to the "tasks" allegedly performed by Mr. Hasanoff and the forfeiture allegations, both of which subjects were raised in Mr. Hasanoff's Bill of Particulars motion, and about which the government, at the February 17, 2010, hearing, promised to provide additional information.

1

grant Mr. Hasanoff's motions in their entirety.

**Statement of Facts**

Sabirhan Hasanoff and his co-defendant, Wesam El-Hanafi, are charged with:

(1)    conspiracy to provide material support or resources to an FTO, in violation of 18 U.S.C. §2239B (Count One);

(2)    providing or attempting to provide material support or resources to an FTO, in violation of 18 U.S.C. §2239B (Count Two);

(3)    conspiracy to make and receive a contribution of funds, goods, or services to, and for the benefit of, al Qaeda, in violation of the International Emergency Economic Powers Act (hereinafter "IEEPA") (50 U.S.C. §1705(a), 31 C.F.R. §595.204 & 595.205) (Count Three);  and

(4)    making and receiving a contribution of funds, goods, or services to, and for the benefit of, al Qaeda, in violation IEEPA (Count Four).

The Indictment also includes forfeiture allegations pursuant to 18 U.S.C. §§981(a)(1)(c), (a)(1)(G), and 28 U.S.C. §2461(c).

Count One alleges that Mr. Hasanoff and Mr. El-Hanafi conspired "to provide 'material support or resources,' as that term is defined in [18 U.S.C. §2339A(b)],  to [an FTO]" by "agree[ing] to provide al Qaeda with, among other things, computer advice and assistance, services, currency, and physical assets . . . in violation of [18 U.S.C. §2339B]."  *See* Indictment, at ¶¶ 1 & 2.

Count Two, which also charges a violation of the "material support" statute, 18 U.S.C. §2339B, alleges Mr. Hasanoff and Mr. El-Hanafi violated §2339B by "provid[ing] and

2

attempt[ing] to provide 'material support and resources' . . . in that El-Hanafi and Hasanoff provided financial support, equipment and technological advice to al Qaeda associates in Yemen and elsewhere."  *See* Indictment, at ¶ 4.

Counts Three and Four allege, respectively, a conspiracy to make or receive a contribution of funds, goods, or services to, and for the benefit of, al Qaeda, and the making or receiving of the same.  Both the conspiracy charged in Count Three and the substantive offense charged in Count Four allege that the "contribution of funds, goods, or services" was the provision of "money, equipment, and technological advice to al Qaeda."  *See* Indictment, at ¶¶ 5 & 7.

## POINT I

### COUNT TWO SHOULD BE DISMISSED BECAUSE IT FAILS TO STATE AN OFFENSE UNDER 18 U.S.C. §2339B, AND/OR IS UNCONSTITUTIONALLY VAGUE AS APPLIED

Count Two of the Indictment alleges that Mr. Hasanoff violated 18 U.S.C. §2339B, which criminalizes the provision of "material support or resources *to designated foreign terrorist organizations*," by providing "financial support, equipment and technological advice *to al Qaeda associates*."  *See* Indictment, at ¶ 4 (emphasis added).  However, as detailed below, because Count Two does not allege two essential elements of §2339B – that the "material support" was provided to an FTO, and that Mr. Hasanoff manifested the required *mens rea* (the knowledge that the "material support or resources" would be used to further the activities of the FTO) – it should be dismissed for its failure to state an offense under §2339B.

Also, if the Indictment is deemed to be valid as currently constituted, §2339B is unconstitutionally vague as applied because a conviction would be based on terms and conditions

3

that are entirely undefined in the statute or elsewhere.

**A.    *The "Material Support" Statutes – 18 U.S.C. §§2339A & B***

The "material support" statute under which Mr. Hasanoff is charged, 18 U.S.C. §2339B, requires that the "material support" alleged be provided to an FTO.  It is that object – an FTO – of the "material support" that distinguishes §2339B from §2339A, which does *not* require that the "material support" be provided to an FTO.

Accordingly, a violation of §2339B is defined as follows:

> [w]hoever, knowingly provides material support or resources *to a foreign terrorist organization,* or attempts or conspires to do so . . . [violates §2339B].

18 U.S.C. §2339B(a)(1) (emphasis added).

Thus, any violation of §2339B requires both that the "material support" was provided to an FTO , and the requisite *mens rea*:  the defendant's knowledge that his support or resources would assist the designated FTO.

**B.    *The Applicable Law Regarding Challenges to the Sufficiency of an Indictment***

As the Second Circuit stated in *United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000), "[a]n indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments."  *Id.* at 92, *citing Russell v. United States*, 369 U.S. 749, 760-61 (1962).

The Sixth Amendment "guaranty of the defendant's right 'to be informed of the nature and cause of the accusation' against him is also offended by an indictment that does not state the essential elements of the crime."  212 F.3d at 93, *quoting Russell*, 369 U.S. at 761, *and citing Walsh*, 194 F.3d at 44.  Accordingly, the Indictment must be scrutinized to determine whether it meets these constitutional and statutory standards, and such scrutiny reveals that the Indictment is

4

fatally deficient.

**C.** ***Count Two Must Be Dismissed Because It Fails to Allege Two Essential Elements of 18 U.S.C. §2339B:  That the "Material Support" Alleged Was Provided to an FTO, and That Mr. Hasanoff Possessed the Requisite* Mens Rea *for the Offense***

Count Two patently fails to allege two essential elements of the charged offense:  (1)  that the alleged "material support" be provided to an FTO, and that (2)  the defendant knew that the material support assist the FTO.  Consequently, Count Two offends both the Fifth and Sixth Amendments, and must be dismissed.

**1.** ***The Material Support Must Be Provided to an FTO, Not Merely to Individuals***

Count Two simply does not allege that Mr. Hasanoff provided material support to an FTO.  Rather, Count Two alleges that the alleged material support, in the form of "financial support, equipment and technological advice[,]" was provided "to al Qaeda associates[.]" Indictment, at ¶ 4.  That is decidedly *not* the equivalent of an FTO, and does not satisfy the statute.

The distinction between providing material support to persons in their individual capacity – which is *not* a violation of §2339B – and providing that same support to an FTO, which the statute *does* proscribe, was recognized by the Court in *United States v. Paracha*, not reported in ___ F.Supp.2d ___, 2006 WL 12768 (S.D.N.Y. 2006), which ruled (and instructed the jury) that

> the government must prove that in providing material support or resources, Paracha did so knowing *that the material support or resources could or would be utilized to further the activities of the al Qaeda entity and not just the personal interests of al Qaeda's individual members.*

*Id.*, at *25.  *See also id.*, at 13, 24.

The plain language of the statute requires that the material support at issue be provided to

an FTO, *not* merely to individuals who are alleged to be "associates" of that FTO.  The statute prohibits material support to *an entity*, not simply persons.  Count Two fails to make that necessary allegation, and therefore does not state an offense.  As a result, it must be dismissed.

**2.      *Count Two Should Also Be Dismissed Because It Fails to Allege the* Mens Rea *Necessary to Prove a Violation of 18 U.S.C. §2339B***

Count Two must also be dismissed because it fails to allege the *mens rea* necessary to prove a violation of §2339B.  As the Court in *Paracha* explained, the government must allege "not only that [the defendant] in fact rendered material support . . . to one or more members of al Qaeda, but also that he acted with *the knowledge that his support would be used to further al Qaeda activities and not just the personal interests of the individual members*."  *Id*., at *24 (emphasis added).

Count Two does not allege that requisite knowledge.  Instead, it fails to allege more than that Mr. Hasanoff provided (or attempted to provide) material support to "al Qaeda associates," omitting the knowledge element, *i.e.*, that Mr. Hasanoff knew that his assistance "could or would be utilized to further the activities of the al Qaeda entity."  *Id*, at *25.

Indeed, it is more than possible that Mr. Hasanoff knew that the "financial support, equipment and technological advice to al Qaeda associates" alleged in Count Two assist those persons in their individual capacities and endeavors, and not to al Qaeda as an entity.  Such support could have been for purposes entirely unrelated to al Qaeda entity, *i.e.*, a business, and which would therefore have not been known to further the activities of an FTO.

Thus, the Indictment does not allege two essential elements of a violation of §2339B, requiring that Count Two be dismissed.

**D.**     ***If the Indictment Is Deemed Sufficient, §2339B Would Be Unconstitutional As Applied to Mr. Hasanoff In This Case***

A fundamental rule of statutory construction is that a statute should be construed in a manner that preserves its constitutionality. *United States ex rel. Attorney General, v. Delaware & Hudson Co.*, 213 U.S. 366, 408 (1909) (when "a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, [a court's] duty is to adopt the latter"). *See also Jones v. United States*, 526 U.S. 227, 239-40 (1999). *Accord Triestman v. United States*, 124 F.3d 361, 377 (2d Cir. 1997); *United States v. Al-Arian*, 329 F. Supp.2d 1294, 1298 & n. 11 (M.D. Fla. 2004) (relative to §2339B); *United States v. Khan*, 309 F. Supp.2d at 822 (applying the same principle to "personnel" in the context of §2339A).

Here, with respect to Count Two, if material support need not be provided to an *FTO*, rather than simply to individuals, and if the Indictment fails to allege the required knowledge that the material support be provided to assist an FTO, §2339B would be unconstitutionally vague as applied in this case.

**1.**     ***The Standards Governing Vagueness Analysis***

The terms of a criminal statute must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. *Connally v. General Construction Co.*, 269 U.S. 385, 391 (1926). Therefore, "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates . . . due process of law." *Id.; see also United States v. Wunsch,* 84 F.3d 1110, 1119 (9th Cir. 1996).

Accordingly, "[a] statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited." *Humanitarian Law Project v. Reno*, 9 F.Supp.2d 1176, 1201 (C.D. Cal. 1998) *(HLP I)*, *affirmed by Humanitarian Law Project v. Reno (HLP II)*, 205 F.3d 1130 (9th Cir. 2000); *see also Humanitarian Law Project v. U.S. Dept. of Justice*, 352 F.3d 382, 403 (9th Cir. 2003) *(HLP III)* (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 638 (9th Cir. 1998)) ("it is 'a fundamental requirement of due process ... that a statute must clearly delineate the conduct it proscribes'"), *rev'd on other grounds*, *Holder v. Humanitarian Law Project*, ----- U.S. -----, 130 S. Ct. 49 (2009).

In *Grayned v. City of Rockford*, 408 U.S. 104 (1972), the Supreme Court identified three core problems with vague laws:

> [v]ague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory application. Third, but related, where a vague statute abuts upon sensitive areas of basic First Amendment freedoms, it operates to inhibit the exercise of those freedoms. Uncertain meanings inevitably lead citizens to steer far wider of the unlawful zone ... than if the boundaries of the forbidden areas were clearly marked.[2]

---

[2] The Ninth Circuit has since summarized the *Grayned* Court's justifications to void vague statutes as follows: "(1) to avoid punishing people for behavior that they could not have known was illegal; (2) to avoid subjective enforcement of the laws based on 'arbitrary and discriminatory enforcement' by government officers; and (3) to avoid any chilling effect on the exercise of First Amendment freedoms." *HLP I*, 9 F.Supp.2d at 1201 (quoting *Foti*, 146 F.3d at 638), *rev'd on other grounds*, *Holder v. Humanitarian Law Project*, ----- U.S. ------, 130 S. Ct.

*Id.*, at 108-09 (internal citations, quotations, and footnotes omitted).

Accordingly, the Court has frequently ruled that a statute is void for vagueness under the Due Process Clause of the Fifth Amendment if it fails to provide a person of ordinary intelligence fair notice of what it proscribes.  *See Colautti v. Franklin*, 439 U.S. 379, 390 (1979); *United States v. Harriss*, 347 U.S. 612, 618 (1954).  More recently, and within the context of § 2339A(b)'s definition of "material support or resources," the Ninth Circuit emphasized the vagueness doctrine's notice requirement:

> [t]he key concern underlying the due process requirement for clarity in criminal statutes is fair notice: 'It is impermissible to define a criminal offense so vaguely that an ordinary person is left guessing about what is prohibited and what is not.  Notice that does not provide a meaningful understanding of what conduct is prohibited is vague and unenforceable.'

*HLP III,* 352 F.3d at 403*,* n.15 [*quoting Free Speech Coalition v. Reno*, 198 F.3d 1083, 1095 (9th Cir. 1999)].

As noted in *Grayned*, the doctrine is also concerned with statutes that are so vague as to allow for arbitrary and discriminatory law enforcement.  Not only has the Supreme Court found such laws to be unconstitutionally vague, *see, e.g., Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972), but it has suggested that this justification in voiding such statutes is the more important purpose under the vagueness doctrine.  *Smith v. Goguen*, 415 U.S. 566, 574 (1974) ("perhaps the most meaningful aspect of the vagueness doctrine is not actual notice, but the other principal element of the doctrine – the requirement that a legislature establish minimal guidelines to govern law enforcement").

---

49 (2009).

Thus, "the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

> **2.      §2339B Is Unconstitutionally Vague As Applied In This Case**

If Count Two is permitted to stand even though it does not allege material support to an FTO, and even though it fails to allege the requisite knowledge, §2339B would be unconstitutionally vague as applied in this case.  Ordinary persons, including Mr. Hasanoff, would not be on sufficient notice that §2339B proscribed not just material support to an FTO, but also to individuals.  The same is true with respect to any application of the statute that did not require knowledge that the material support be provided to an FTO.

That standardless application of §2339B would also constitute arbitrary and discriminatory enforcement of the statute.  As noted **ante**, though, the principles of statutory construction mandate dismissal of Count Two rather than an interpretation and application of the statute that would render it unconstitutionally vague as applied.

**POINT II**

**REFERENCE TO "PHYSICAL ASSETS" IN COUNT ONE
SHOULD BE STRICKEN FROM THE INDICTMENT BECAUSE
(1) "PHYSICAL ASSETS" ARE OUTSIDE THE DEFINITION OF
"MATERIAL SUPPORT" UNDER 18 U.S.C. §2339A(b); AND/OR (2)
18 U.S.C. §2339B IS UNCONSTITUTIONALLY VAGUE AS APPLIED**

Count One alleges that Mr. Hasanoff and Mr. El-Hanafi conspired "to provide 'material support or resources,' as that term is defined in [18 U.S.C. §2339A(b)]" by "agree[ing] to provide al Qaeda with, among other things, . . . physical assets . . . in violation of [18 U.S.C.

10

§2339B].”  *See* Indictment, at ¶¶ 1 & 2.   The term “physical assets” must be stricken from the

Indictment because (1) “physical assets” is a term not included among the statutorily enumerated

forms of “material support,” set forth in 18 U.S.C. §2339A(b) (defining “material support”),

and/or (2)  18 U.S.C. §2339B is unconstitutionally vague as applied.

**A.**      ***The Term “Physical Assets” Must Be Stricken from Count One Because It Is
Not Included in §2339A(b) among the Enumerated Forms of “Material Support”***

**1.**      ***The Definition of “Material Support”***

The present definition of the term “material support or resources,” which applies to both

§2339A and §2339B, is as follows:

> (1)  any property, tangible or intangible, or service, including
> currency or monetary instruments or financial securities, financial
> services, lodging, training, expert advice or assistance, safehouses,
> false documentation or identification, communications equipment,
> facilities, weapons, lethal substances, explosives, personnel (1 or
> more individuals who may be or include oneself), and
> transportation, except medicine or religious materials[.]

18 U.S.C. §2339A(b).

That definition has been in effect since the statute was amended December 17, 2004.

Notably, among the December 2004 amendments to the “material support” statute(s) was the

*deletion* of  “physical assets” from the definition of the term “material support and resources” set

forth in §2339A(b)(1).   Thus, the definition of “material support” no longer includes the

provision of “physical assets,” thereby evincing an indisputable Congressional intent and

decision to remove that term from the list of what qualifies as “material support.”

2.    *The Applicable Law Regarding Challenges to An Indictment*

In addition to the law regarding challenges to an indictment set forth **ante**, in POINT I,

courts have held that "a charging document fails to state an offense if the specific facts alleged in

the charging document fall beyond the scope of the relevant criminal statute, as a matter of

statutory interpretation." *United States v. Panarella*, 227 F.3d 678, 685 (3d. Cir. 2000). *See also*

*United States v. Alsugair*, 2003 WL 1799003 (D.N.J. April 3, 2003). Thus, if facts alleged in the

charging document do not establish the crime charged, the charge must be dismissed. *Panarella*,

227 F.3d at 685. Accordingly, when an indictment contains both facts within the scope of the

relevant criminal statute and facts beyond the statute's scope that fail to state an offense, the facts

that fall beyond the scope of the statute must be stricken from the indictment.

3.    *Any Reference to the Provision of "Physical Assets" As a Form*
      *of "Material Support" Must Be Stricken from Count One*

The current statutory definition of "material support" set forth in 18 U.S.C. §2339A(b) –

which deliberately and specifically excludes "physical assets"– makes obvious by its omission

that the term "physical assets" does not allege adequately any statutorily enumerated form of

"material support."[3] Thus, the factual allegation in Count One that Mr. Hasanoff conspired to

provide al Qaeda with "physical assets," falls beyond the scope of material support to an FTO

under 18 U.S.C. §2339B, and does not establish the crime charged. Since, as set forth in

*Panarella*, "the charge must be dismissed" when "facts alleged in the charging document do not

establish the crime charged," it is respectfully submitted that any reference to the provision of

"physical assets" as a form of "material support" should be stricken from the Indictment. *See*

---

[3]  Mr. Hasanoff sought a definition of "physical assets" in his Request for a Bill of
Particulars, but the government failed to provide any definition of this term.

*Panarella*, 227 F.3d at 685.

**B.**     ***The Definition of "Material Support or Resources" In Count
One Is Unconstitutionally Vague As Applied to Mr. Hasanoff***

Moreover, as was the case with respect to POINT I (in the context of Count Two and the

FTO and *mens rea* elements), if the term "physical assets" is permitted to remain in Count One,

§2339B would be unconstitutionally vague as applied in this case, in violation of the Fifth

Amendment's Due Process guarantee.  Unless the allegation that Mr. Hasanoff conspired to

provide "material support" to an FTO by providing "physical assets" is stricken from the

Indictment, the "material support statute(s) are in unavoidable conflict with the Fifth

Amendment's guarantee of Due Process.

The prospect that a material support prosecution could be premised on something that is

not only not in the definition of material support, but which Congress by amendment

*affirmatively deleted from the statute*, defies both adequate notice and the requirement that a

statute be definitive in its prohibitions.  Such an untethered version of material support would

clearly not be sufficiently explicit to inform those who are subject to 18 U.S.C. §2339B of what

conduct on their part will render them liable to its penalties.  *See Connally*, 269 U.S. at 391.

Consequently, if this allegation that Mr. Hasanoff conspired to provide "material support"

to an FTO by providing "physical assets" remains in the Indictment, its inclusion would render

§2339B unconstitutional as applied, and thereby violate Mr. Hasanoff's Fifth Amendment right

to Due Process.  Accordingly, the term "physical assets" must be stricken from Count One, and

any predicate for liability under §2339B be limited to the type of material support defined in the

statute.

13

## POINT III

## THE GOVERNMENT SHOULD BE COMPELLED TO ELECT FROM COUNTS ONE, TWO, THREE, OR FOUR, OR THEY SHOULD BE DISMISSED, ON THE GROUND OF MULTIPLICITY

Counts One, Two, Three and Four are multiplicitous, as they allege a single offense in multiple counts.  For example, the crime charged in Count Two, 18 U.SC. §2339B (Material Support or Resources to an FTO), allegedly knowingly providing financial support, equipment, and technical advice to al Qaeda, is a lesser-included offense of that in Count Four, 50 U.S.C. §1705(a), 31 C.F.R. §§595.204 and 595.205 (International Emergency Economic Powers Act), alleging the knowing and willful provision of money, equipment and technological advice to al Qaeda.

Also, those two counts charge the same offense as a violation of two statutes that were never intended to impose multiple punishments for the same conduct.  The same is true with the paired conspiracy counts, Counts One and Three, which suffer the same fate.  Finally, Counts One and Two are multiplicitous because Congress did not intend to impose multiple punishment for conspiracy and substantive violations of §2339B based on the same criminal conduct.

The danger of a multiplicitous indictment is that it may violate double jeopardy by resulting in multiple sentences or punishments for a single offense, or that it may prejudice the defendants by causing the jury to convict on a given count solely on the strength of evidence on the counts remaining. *See United States v. Reed*, 639 F.2d 896, 908 (2d Cir. 1981).

Here, it does not matter whether the prolix nature of the Indictment in this case results from ignorance of the rules of proper pleading, or from the fact that objectives other than clarity were the governing consideration in drafting the charges in this prosecution. In either case, the

remedy must be the same:  the government must elect a single, clearly stated charge as the basis for each offense, or suffer dismissal.

**A.**    ***The Applicable Law and Principles Governing the Multiplicity of Charges Arising Under Two Separate Statutes.***

An indictment is multiplicitous when it charges a single offense as separate offenses multiple times in separate counts, when in law and fact only one crime is alleged to have been committed. *See United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999).

A multiplicitous indictment violates the Double Jeopardy Clause of the Fifth Amendment because it subjects a person to punishment for a single crime more than once. *United States v. Dixon*, 509 U.S. 688, 696, (1993). A defendant may be convicted only once for each offense, and the rule against multiplicity protects against multiple *convictions* for the same offense, not just against the imposition of multiple *sentences* for the same offense. *Ball v. United States*, 470 U.S. 856 (1985).

The test for determining whether offenses charged in separate counts of an indictment are the same, and thus multiplicitous, is whether each statutory provision requires proof of an additional fact the other count does not. *See Blockberger v. United States*, 284 U.S. 299 (1932). In *United States v. Josephberg*, 459 F.3d 350, 356 (2d Cir. 2006) (per curiam), the Second Circuit explained that the *Blockberger* inquiry entails determining whether there is an element in each offense that is not contained in the other, and not whether the conduct underlying the separate counts is identical.

As the Court in *Josephberg* advised, "the touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes [. . .] it is critical [to determining] whether the 'offense'-- in the legal sense, as defined by Congress --

complained of in one count is the same as that charged in another." *Josephberg*, 459 F.3d at 356 (quoting *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999)).

The elements subject to the *Blockburger* inquiry must be determined by reference to those the prosecution needs to prove for the charges to which jeopardy attaches, not by reference to the statutes in the abstract. *See, e.g., Dixon,* 509 U.S. at 698 (contempt conviction barred a subsequent prosecution of predicate offense); *Harris v. Oklahoma*, 433 U.S. 682, 682-83 (1977) (felony murder conviction resulting from a killing during the commission of robbery barred a subsequent robbery prosecution despite the fact that the elements of robbery were not necessarily included in every felony murder); *Chacko* 169 F.3d at 145 (comparing elements of 18 U.S.C. § 1014 and § 1344 as-charged).

Thus, if one offense, among many possibilities, serves in a particular case as the predicate for a greater offense, the defendant cannot be prosecuted or punished twice for both offenses. *See Dixon*, 509 U.S. at 698 ("[h]ere, as in *Harris,* the underlying substantive criminal offense is 'a species of lesser-included offense'").

Moreover, a conspiracy is an agreement among conspirators to commit one or more unlawful acts. *See Braverman v. United States*, 317 U.S. 49, 53 (1942). Therefore, "[a] single agreement to commit several crimes constitutes one conspiracy," but "multiple agreements to commit separate crimes constitute multiple conspiracies." *United States v. Broce*, 488 U.S. 563, 570-71 (1989).

**B.**   ***The Court Should Dismiss Counts Three and Four on Grounds of Multiplicity.***

Counts Three and Four charge the same criminal offense in law and fact as Counts One and Two, respectively.  They should be dismissed, or the government should be ordered to elect one offense from each multiplicitous set of counts on which to proceed.

1.      *The Offenses Charged in Counts One and Two Are Lesser-Included Offenses of Those in Counts Three and Four, Respectively*

Counts Two and Four make the same allegation, *i.e.*, that the defendants provided financial support, equipment, and technical advice to al Qaeda. Count Two alleges that defendants violated 18 U.S.C. §2339B—providing and attempting to provide material support or resources to a foreign terrorist organization—by knowingly providing financial support, equipment, and technical advice to al Qaeda. Indictment, at ¶4. Count Four is a mirror, alleging that the defendants violated 50 U.S.C. 1705(a), 31 C.F.R. §§595.204 and 595.205—making and receiving a contribution of funds, goods, or services to, and for the benefit of al Qaeda—for the knowing and willful provision of money, equipment and technological advice to al Qaeda. Indictment, at ¶7.

 The statute charged in Counts One and Two criminalizes "[w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so." 18 U.S.C. §2339B(a)(1). The elements of the substantive offense alleged are: (1) provision of material support or resources, (2) to an FTO, and (3) knowledge of either the FTO designation or the terrorist activities of the FTO.

The statute charged in Counts Two and Four criminalizes the willful "deal[ing] in property or interests in property of a specially designated terrorist." 50 U.S.C. 1705(a), 31 C.F.R. § 595.204. The elements of the substantive offense alleged are: (1) dealing in property or interests in property (2) of a specially designated terrorist with (3) willful intent.

One difference among the statutes is that 2339B criminalizes the "provision of material support or resources," whereas IEEPA criminalizes "dealing in property or interests in property." However, the term "material support or resources" is defined as "any property, tangible or

17

intangible, or service," 18 U.S.C. § 2339B(g)(4),[1] all of which are prohibited under IEEPA.  *See* 31 C.F.R. §595.204 (defining "dealing in the *property* or interests in property of a specially designated terrorist," to include "the *making* or receiving of *any contribution* of funds, goods, or *services*") (emphasis added).

Another difference between the statutes is that § 2339B criminalizes the provision of material support to a "foreign terrorist organization," whereas the IEEPA statute criminalizes dealings in the property or interests in property of a "specially designated terrorist."  However, the "foreign terrorist organization" complained of in Counts One and Two -- al Qaeda -- is the same "specially designated group" referred to in Counts Three and Four.

Moreover, the list of "foreign terrorist organizations" referred to in § 2339B is simply a *subset* of the list of "specially designated terrorists" referenced in § 595.204.  *Compare* U.S. State Dep't, Foreign Terrorist Organizations (available at http://www.state.gov/s/ct/rls/other/des/123085.htm) *with* U.S. Dep't of the Treasury, Specially Designated Nationals List (available at www.treasury.gov/ofac/downloads/sdnlist.txt); *see also* U.S. Dep't Justice, Jeff Breinholt,[2] *Reaching the White Collar Terrorist (Operational Challenges)*, at 12 (2004) ("SDGT list now includes all of the organizations on the State

-----

[1] 18 U.S.C. § 2339A defines "material support" as:

> any property, tangible or intangible, or service, *including* currency or monetary instruments or financial securities, financial services, lodging, training, expert advice or assistance, safehouses, false documentation or identification, communications equipment, facilities, weapons, lethal substances, explosives, personnel (1 or more individuals who may be or include oneself), and transportation, except medicine or religious materials.

18 U.S.C. § 2339A (emphasis added).

[2] Deputy Chief, Counterterrorism Section, Criminal Division U.S. Dept. Justice.

Department's list of Foreign Terrorist Organization (FTO), plus many more. *Thus, there is a potential IEEPA violation in every § 2339B investigation*") (emphasis added).

Another difference is that § 2339B criminalizes "knowing" provision of material support or resources, whereas the IEEPA statute requires "willfulness." However, "[i]n order to establish a 'willful' violation of a statute, 'the Government must prove that the defendant acted with knowledge that his conduct was unlawful.'" *See Bryan v. United States*, 524 U.S. 184, 191-92 (1998) (quoting *Ratzlaf v. United States,* 510 U.S. 135, 137 (1994)).

The unlawful conduct in the IEEPA statute is "dealing in the property or interests in property of a specially designated terrorist." Because dealing in property or interests in property, alone, is not unlawful, the unlawfulness of the alleged conduct turns on the dealings being for the benefit of *a specially designated terrorist*. Thus, willful violation of the IEEPA statute *necessarily* requires, at minimum, knowledge of the group's designation or its terrorist activities.

In addition, the element of "willfulness" is incorporated into *both* offenses charged in Counts One and Three because conviction for conspiracy requires a defendant's "knowing and willful joinder in that conspiracy." *See, e.g.*, *United States v. Svoboda*, 347 F.3d 471, 476 (2d Cir. 2003).

The preceding comparison of the elements of these two statutes yields but one conclusion: the material support offenses charged in Counts One and Two are lesser-included offenses of the IEEPA offenses charged in Counts Three and Four.

**2.** ***§2339B's Legislative History Supports the Presumption That It Was Not Intended to Impose Punishment Cumulative to That Imposed for IEEPA***

The legislative history of 18 U.S.C. §2339B confirms the conclusion reached as a result of the "same elements" test: Congress did not intend to impose cumulative punishment for violation of §2339B and IEEPA offenses charged in the same indictment and based on the same

set of operative facts.  Rather, the §2339B and IEEPA offenses charged in the Indictment merely define two avenues of prosecuting the same conduct and offense.

Examination of the statutes' respective purposes is instructive.  For example, the President may use his IEEPA powers only "to deal with an unusual and extraordinary threat with respect to which a national emergency has been declared." 50 U.S.C §1701(b); *see* Robert M. Chesney, <u>The Sleeper Scenario: Terrorism-Support Laws and the Demands of Prevention</u>, 42 Harv. J. on Legis. 1, 5 (2005) ("IEEPA, in short, authorizes the President to impose whole or partial economic embargoes during emergencies").  The "Material Support" statutes, on the other hand, emerged out of a need to regulate activity supportive of terrorist groups in *non-emergency* situations.

That need was first expressed by the Reagan administration.  *See Antiterrorism and Foreign Mercenary Act: Hearing Before the Subcomm. on Security and Terrorism of the S. Comm. on the Judiciary, 97th Cong. 2 (1982)*, at 70-77 (letter from Asst. Sec'y for Cong. Relations Powell A. Moore, U.S. Dep't of State, to Sen. Charles H. Percy, Chairman of the S. Comm. on Foreign Relations (Sept. 14, 1982)) (arguing IEEPA could be used to impose "a virtually total ban on activity supportive of foreign terrorists [or] terrorist groups . . . by persons subject to U.S. jurisdiction," but cautioning that "because IEEPA properly can be used only in extraordinary emergency situations, it does not provide a reliable means to regulate such activities by U.S. citizens under most circumstances")

The Justice Department, Moore indicated, believed that while existing laws were workable, some gaps needed to be closed "in order to facilitate a better federal investigative and prosecutive response to the problems caused by international terrorism." *Id.* at 76.  The result

was a series of proposed laws that called for the enactment of support-for-terrorism laws, eventually resulting in the 1994 passage of 18 U.S.C. §2339A.

Implicitly recognizing that the scienter requirement[3] in §2339A could not be used to embargo foreign terrorist organizations comprehensively, the Clinton Administration turned to its IEEPA authority. Approximately four months after §2339A became law, President Clinton declared a national emergency in connection with efforts by foreign terrorist organizations to sabotage the Middle East peace process.

But this use of IEEPA was not intended by the Administration to be the final resolution of the problem of domestic support for foreign terrorist organizations. *See* Senior Administration Official, Background Briefing, (reporting comments and answers provided by a "senior administration official" regarding the need for new legislation in addition to the existing §2339A authority and the new IEEPA order to embargo terrorist organizations *outside* the Middle East).

As the Moore Letter had cautioned in 1982, an IEEPA embargo had to be tied to the particular emergency invoked. To embargo groups that could not plausibly be linked to interference with the Middle East peace process, then, the Administration would have had to declare a new emergency or obtain new authority from Congress. Accordingly, at the same time that it issued its January 1995 IEEPA order, the Clinton Administration announced plans for new legislation including a measure specifically targeting "fund-raising" within the United States by foreign terrorist groups. *See* Bill Gertz & J. Jennings Moss, *Clinton Puts U.S. Banking Off-limits to Terrorist Groups*, Wash. Times, Jan. 25, 1995, at A3 (citing statements by White House spokesman Michael McCurry).

---

[3] Violation of 18 U.S.C. 2339A requires the provider of material support to "know or intend that [the aid is] to be used in preparation for, or in carrying out, a violation" of any of more than two dozen crimes of violence specified in the statute.

The Administration's proposal included a proposed congressional finding that "the provision of funds to organizations that engage in terrorism serves to facilitate their terrorist endeavors regardless of whether the funds, in whole or in part, are intended or claimed to be used for non-violent purposes." S. 390, 104th Cong. § 301 (1995) (proposing 18 U.S.C. §2339B(a)(1)(G)).[4]  Building on this finding, 18 U.S.C. §2339B was proposed to "grant the President IEEPA-style authority" during non-emergency times.  *See* Chesney, 42 Harv. J. on Legis. 1, 15 (2005).

Yet despite the legislative interplay between IEEPA and the Material Support statutes, there is not a scintilla of legislative history that suggests that the two schemes were intended to impose concurrent punishments. Rather, the Material Support statutes compliment IEEPA to provide a means to prosecute those that support terrorist groups *during non-emergency times*. Therefore, Counts Three and Four should be dismissed as multiplicious with Counts One and Two, respectively. In the alternative, the government should be ordered to elect one offense from each multiplicitous set of counts with which to proceed.

**C.**     ***Applicable Law Governing Multiplicity of Charges Arising from the Same Statute***

When, as here, the same statutory violation is charged twice, the *Blockberger* inquiry is inappropriate "because there is only one statute at issue, and so, nothing to compare." *United States v. Ansaldi*, 372 F.3d 118, 131 (2d Cir. 2004).  *See also United States v. Gore,* 154 F.3d 34, 44 (2d Cir. 1998) (offenses charged under same statutory violation multiplicitous despite satisfaction of *Blockburger* and noting Supreme Court has only applied *Blockburger* in cases comparing separate statutes).

---

[4] Section 301 ultimately became law in Pub. L. 104-132, 110 Stat. 1214 (1996).

Rather than determining "whether one act falls within two distinct statutes," *Ansaldi,* 372 F.3d at 131, the question is "whether the *facts* underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Polouizzi*, 564 F.3d 142, 155 (2d Cir. 2009) (citing to *Ansaldi* at 124); *Bell*, 349 U.S. 81, 83-84 (1955). If Congress leaves a statute ambiguous regarding the proper unit of prosecution, "courts may not turn a single transaction into multiple offenses." *United States v. Kerley*, 544 F.3d 172, 178 (2d Cir. 2008) (citing *Bell*, 349 U.S. at 84).

As the Supreme Court stated in *Bell:*

> [w]hen Congress has the will, it has no difficulty in expressing it - when it has the will, that is, of defining what it desires to make the unit of prosecution... When Congress leaves to the Judiciary the task of impugning to Congress an undeclared will, the ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want for sympathy with the purpose of Congress in proscribing evil or anti-social conduct, it may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This... merely means that *if* Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses.... (emphasis added).

349 U.S. at 83-84.

Thus, when construing a statute that is ambiguous with respect to the unit of prosecution, the courts will merge two offenses when one is the "sole evidence" of the other, or when it exists "only at the moment of the other."  *Gore,* 154 F.3d at 46-7; *Prince v. United States*, 352 U.S. 322 (1957).

**D.     *The Court Should Dismiss Portions of Count Two on Multiplicity Grounds***

Portions of Count Two should be dismissed because they charge the same criminal offense as in Count One.

**1.      *Neither the Language of §2339B Nor Its Legislative History Evinces Any Congressional Intent to "Pyramid the Penalties" for Attempt and Conspiracy***

The statute charged in Counts One and Two states, in relevant part:

> [w]hoever knowingly provides material support or resources to a foreign terrorist organization, or attempts or conspires to do so, shall be fined under this title or imprisoned *not more than 15 years*, or both.

18 U.S.C. §2339B(a)(1) (emphasis added).

The language of the statute does not make clear that the Congress intended to impose cumulative punishments for attempt and conspiracy to provide material support or resources to a foreign terrorist organization. *Cf. United States v. Khalil*, 214 F.3d 111, 117-118 (2d Cir. 2000) (no double jeopardy violation where statute *expressly* provided that 30-year sentence for use or carrying a destructive device in relation to a crime of violence is to be imposed "in *addition* to the punishment provided for such crime of violence").

To the contrary, Congress chose a statutory framework of alternative offenses followed by a single penalty provision, strongly suggesting that it did *not* intend to create multiple punishments for each statutory violation.[5] Use of the word "or" between alternative offenses is similar to that of the word "any," preceding them. That statutory structure "has typically been found ambiguous in connection with the allowable unit of prosecution, for it contemplates the plural, rather than specifying the singular." *Polouizzi*, 564 F.3d at 155 (quoting *United States v. Coiro,* 922 F.2d 1008, 1014 (2d Cir.1991)) (internal citations omitted).

Nor does a review of the legislative history support a reading that Congress intended to impose cumulative punishments. Congress' apparent purpose in adding §2339B to the Antiterrorism and Effective Death Penalty Act of 1996 was to ensure that persons aiding terrorist

---

[5] In contrast, Congress included a *separate* penalty clause when "the death of any person results" in the violation of the §2339B, authorizing imprisonment for "any term of years or for life."

organizations would not escape punishment, irrespective whether they accomplished their intended crime.  That, too, presents a contraindication that Congress intended to permit separate prosecution and punishment for each alternative offense. *See Heflin v. United States,* 358 U.S. 415, 419-20 (1959) ("[b]ut in view of the legislative history of [18 U.S.C. § 2113](c) we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves"); *Prince,* 352 U.S. at 327 (providing similar analysis).

Moreover, that Congress has amended §2339B three times since its inception in 1996, while still retaining the same basic statutory framework of alternative offenses followed by a single penalty provision, again suggests that Congress did not by these various amendments and recodifications intend to create multiple punishments for each statutory violation. *Prince*, 352 U.S. at 328 & n. 10, (amendments that merely inserted additional offenses without altering existing penalty scheme persuasive evidence that Congress did not intend to impose multiple punishment for violations of multiple offenses under the statute).

The 2001 amendment to §2339B's sister statute, 18 U.S.C. §2339A, is also instructive. That statute was amended to add conspiracy and attempt offenses, without altering the existing penalty scheme. PL 107–56, 2001 HR 3162 (Sec. 811. Penalties for terrorist conspiracies) (amending §2339A by amended by inserting "or attempts or conspires to do such an act," before "shall be fined"). The stated purpose of the amendment was to "ensure adequate penalties for certain terrorism-related conspiracies by adding *conspiracy* provisions" PL 107–56, 2001 HR 3162 (emphasis added).  Yet no separate penalty clause was added for the crimes of attempt or conspiracy.

2.      ***The Conspiracy Alleged in Count One Merges with the Alleged Attempt Charged in Count Two Because the Conspiracy Constitutes the Sole Evidence of the Attempt***

Absent evidence of a contrary congressional intent, or an indication that the statutory structure precludes such a result, the rule of lenity compels the conclusion that a person alleged to have attempted and conspired to provide material support or resources to an FTO be charged with a single violation of §2339B.  That is particularly so when the alleged conspiracy is the sole evidence of the alleged attempt.

The dissent in *United States v. Farhane*, 634 F.3d 127 (2d Cir. 2011),[6] is illustrative in that regard.  In that case, the defendant was convicted with conspiracy to provide "services" by agreeing to provide medical support to al Qaeda.  He was also convicted with attempt to provide himself as "personnel" based on that same agreement, which involved swearing an oath of allegiance to al Qaeda and providing contact numbers.  As Chief (District) Judge Dearie noted in his spirited dissent:

> by transforming offers to provide services into attempted provision of personnel, the majority's holding may sanction multiple punishments for a single offense. An attempt requires a substantial step toward criminality; a conspiracy requires agreement with another wrongdoer. On these facts, however, the majority substitutes evidence of agreement and intent for evidence of the substantive crime.

*Id.*, at 181-82 (Dearie, C.J., dissenting).

--------

[6] In *Farhane*, the majority stated "no double jeopardy concern arises" with respect to convictions for both attempt and conspiracy under §2339B.  However, there was no discussion whether the *Blockburger* inquiry was appropriate in cases in which the same statutory violation was charged twice, no citation to any supporting authority, nor any effort to distinguish *Palouizzi*, *Ansaldi*, and *Gore* on that basis.  Moreover, that portion of the opinion constitutes *dicta* because no double jeopardy (or multiplicity) claim was raised in the appeal;  nor was it the basis of the Court's holding.

Here, as in *Farhane*, "it is hard to see how the conspiracy and attempt [] meaningfully differ." *Id.* at 182.  The conspiracy with which defendant Hasanoff is charged in Count One allegedly spanned from November 2007 to March of 2010. Indictment, at ¶1. Count One alleges that during that period of time the defendants conspired to provide "computer advice and assistance, services, currency and physical assets" to Al Qaeda. Indictment, at ¶2. Count Two, in part, alleges a continuous, unconsummated attempt to provide "financial support, advice and technical assistance" to Al Qaeda, commencing November 2007, interrupted only by defendant's arrest in March 2010. Indictment, at ¶4.

There is no allegation that an attempt occurred *before* the conspiracy commenced, or *vice versa*.  Moreover, the overt acts delineated in furtherance of the Count One conspiracy are the same acts alleged in Count Two. In addition, the crimes are not alleged to have arisen independently of one another; they were one and the same in law and in fact.  Therefore, portions of Count Two should be dismissed as multiplicitous with Count One.

**E.**    ***Multiplicitous Counts in the Indictment Should Be Dismissed Because They Create Inherent Jeopardy for the Defendant***

Mr. Hasanoff will suffer "jeopardy" not only as a consequence of any sentence that may be imposed (if he is convicted), but also by any conviction for an offense. In *Ball v. United States,* 470 U.S. 856, 861 (1985), the Supreme Court pointed out that:

> [f]or purposes of applying the *Blockburger* test in this setting as a means of ascertaining congressional intent, "punishment" must be the equivalent of a criminal conviction and not simply the imposition of sentence. Congress could not have intended to allow two convictions for the same conduct, even if sentenced under only one.

*Ball,* 470 U.S. at 861.

In his concurring opinion in *Ball,* Justice Stevens explained that:

> [w]hen multiple charges are brought, the defendant is 'put in jeopardy' as to each charge. To retain his freedom, the defendant must obtain an acquittal on all charges [...] The prosecution's ability to bring multiple charges increases the risk that the defendant will be convicted on one or more of those charges. The very fact that a defendant has been arrested, charged, and brought to trial on several charges may suggest to the jury that he must be guilty of at least one of those crimes [...] The submission of two charges rather than one gives the prosecution 'the advantage of offering the jury a choice-a situation which is apt to induce a doubtful jury to find the defendant guilty of the less serious offense rather than to continue the debate as to his innocence.'

*Ball v. United* States, 470 U.S. at 868 (quoting *Cichos v. Indiana,* 385 U.S. 76 [1966])(Fortas, J., dissenting from dismissal of certiorari).

Allowing the four multiplicitous counts of the Indictment to survive dismissal in this case would place Mr. Hasanoff in jeopardy in violation of the Fifth Amendment. It is respectfully submitted that the Court should not wait to dismiss the multiplicitous counts of the instant Indictment until the government potentially gains a conviction in this case.

Accordingly, the Court should dismiss the multiplicitous counts in the Indictment, as conviction on any one of them would violate Mr. Hasanoff's Fifth Amendment right against Double Jeopardy.  In the alternative, the government should be ordered to elect between multiplicitous counts.

**POINT IV**
**MR. HASANOFF RESPECTFULLY JOINS IN**
**THOSE MOTIONS BY HIS CO-DEFENDANT**
**THAT INURE TO MR. HASANOFF'S BENEFIT**

In particular, we note that certain emails were recovered from Mr. Hasanoff's account

that should be suppressed for the same reasons as Mr. El-Hanafi's emails.

**Conclusion**

For all the reasons set forth above, it is respectfully submitted that Mr. Hasanoff's pre-

trial motions be granted in their entirety.

Dated: 3 June 2011
      New York, New York

                             Respectfully submitted,


                             /S/ Joshua L. Dratel
                             JOSHUA L. DRATEL
                             JOSHUA L. DRATEL, P.C.
                             2 Wall Street
                             3rd floor
                             New York, New York 10005
                             (212) 732-0707

                             DAVID A. RUHNKE
                             RUHNKE & BARRETT
                             47 Park Street
                             Montclair, New Jersey 07042
                             (973) 744-1000

                             LINDA MORENO
                             LINDA MORENO, P.A.
                             P.O. Box 10985
                             Tampa, FL 33679
                             (813) 247-4500


                             AHMED GHAPPOUR

29

THE LAW OFFICES OF AHMED GHAPPOUR
P.O. Box 20367
Seattle, WA 98102
(415) 598-8605

*Attorneys for Defendant Sabirhan Hasanoff*

– Of Counsel –

Joshua L. Dratel
David A. Ruhnke
Linda Moreno
Ahmed Ghappour
Lindsay A. Lewis