UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
UNITED STATES OF AMERICA
                                                     :
        - v. -
                                                    :         <u>Opinion and Order</u>
WESAM EL-HANAFI,                                               S5 10 CR 162 (KMW)
       a/k/a "Khaled," and                               :
SABIRHAN HASANOFF,
       a/k/a "Tareq,"                                           :

                        Defendants.         :

---------------------------------------------------------------X

KIMBA M. WOOD, U.S.D.J.:

        On March 2, 2010, a Grand Jury indicted Wesam El-Hanafi ("El-Hanafi") and Sabirhan Hasanoff ("Hasanoff") (collectively, "Defendants"), charging them with providing, and with conspiracy to provide, material support to a foreign terrorist organization, in violation of 18 U.S.C. § 2339B, and with making, and with conspiracy to make, a contribution of funds, goods, or services to a foreign terrorist organization, in violation of 50 U.S.C. § 1705(a).  The Government moves for a Protective Order to withhold certain classified materials from discovery in this case (the "Motion").  The Government has filed the Motion *ex parte*, for *in camera* review, pursuant to Federal Rule of Criminal Procedure 16(d)(1) ("Rule 16(d)(1)") and section 4 of the Classified Information Procedures Act ("CIPA").  18 U.S.C. app. 3 § 4.

**I. Ex Parte Proceedings**

        The Court first considers the appropriateness of adjudicating the Motion without an adversary proceeding.  The Court is mindful of the dangers of allowing *ex parte* proceedings in criminal cases, given the fundamental need to protect Defendants' due process rights.  *In re Taylor*, 567 F.2d 1183, 1188-89 (2d Cir.1977).  The Court's task is made that much more

difficult when "the Court does not have available the fundamental instrument for judicial judgment: an adversary proceeding in which both parties may participate." *Carroll v. President & Comm'rs of Princess Anne*, 393 U.S. 175, 183 (1968).

Nonetheless, *ex parte* and *in camera* proceedings are sometimes necessary to determine if the government's assertion of a legitimate privilege in non-disclosure of information will deprive a defendant of constitutional rights. *See United States v. Mejia*, 448 F.3d 436, 458 (D.C. Cir. 2006).

Both Rule 16(d)(1) and section 4 of CIPA explicitly provide for *ex parte* filings. Fed. R. Crim. P. 16(d)(1) ("The court may permit a party to show good cause by a written statement that the court will inspect ex parte."); 18 U.S.C. app. 3 § 4 ("The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone."). Indeed, "[i]n some cases it would defeat the purpose of the protective order if the government were required to make its showing in open court." Fed. R. Crim. P. 16 advisory committee's note;[1] *see also United States v. Abu-Jihaad*, 630 F.3d 102, 143 (2d Cir. 2010); *United States v. Aref*, 533 F.3d 72, 81 (2d Cir. 2008). The Court recognizes that Defendants and their counsel are in the best position to know whether information would be helpful to their defense, but notes that in the ordinary course of proceedings neither defense counsel nor the Court would be reviewing materials that the Government believes are not discoverable. *See Mejia*, 448 F.3d at 458 ("When a court (rather than the prosecutor alone, as is ordinarily the case) reviews evidence in camera to determine whether it constitutes a witness statement subject to disclosure under the Jencks Act, 18 U.S.C. § 3500(b), or exculpatory material subject to disclosure under *Brady*, the defendant is likewise 'not entitled to access to any of the evidence

---

[1] The advisory committee note continues: "The problem arises in its most extreme form where matters of national security are involved. Hence a procedure is set out where . . . the court may permit the government to make its showing, in whole or in part, in a written statement to be inspected by the court in camera."

2

reviewed by the court . . . to assist in his argument' that it should be disclosed.") (citing *United States v. Carson*, 2002 WL 31246900, at *1 (D.C. Cir. Oct. 2, 2002); *United States v. Zazi*, No. 10 Cr. 60, 2011 WL 2532903, at *3 (E.D.N.Y. June 24, 2011) (Gleeson, J.) (finding that an adversary proceeding in this context "would be particularly anomalous, as it would provide defense counsel access to sensitive information to which, if the government is correct, they are not entitled under any theory").

The Court is convinced that, because of the national security interests involved and the highly sensitive nature of the material at issue in this case, an *ex parte* filing by the Government and *in camera* review of the materials by the Court is the most appropriate procedure through which to decide the Motion. No less restrictive alternative would protect the Government's interest in preventing the disclosure of the classified materials at issue in this case.

**II. CIPA**

CIPA was enacted in 1980 to establish procedures to balance a defendant's right to obtain and present exculpatory material against the government's need to protect classified information.[2] *In re Terrorist Bombings of U.S. Embassies in East Africa*, 552 F.3d 93, 116 (2d Cir. 2008); *United States v. Pappas*, 94 F.3d 795, 799 (2d Cir. 1996); S. Rep. No. 96-823 at 6 (1980). CIPA establishes rules to manage criminal cases involving classified information.

CIPA does not expand or restrict established principles of discovery and does not have a substantive impact on the admissibility of probative evidence. *United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990); *United States v. Johnson*, 139 F.3d 1359, 1365 (11th Cir. 1998). Instead, CIPA "ensures that questions of admissibility will be resolved under controlled

---

[2] CIPA defines "classified information" as "any information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security." 18 U.S.C. app. 3 § 1.

circumstances calculated to protect against premature and unnecessary disclosure of classified information." *United States v. Baptista-Rodriguez*, 17 F.3d 1354, 1364 (11th Cir. 1994).

Discovery in criminal cases is generally governed by Rule 16(d)(1), which provides that:

> At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief. The court may permit a party to show good cause by a written statement that the court will inspect ex parte. If relief is granted, the court must preserve the entire text of the party's statement under seal.

Section 4 of CIPA "clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause, which includes information vital to the national security." *United States v. Stewart*, 590 F.3d 93, 130 (2d Cir. 2009) (internal quotation mark omitted).[3] Section 4 of CIPA explains that:

> The court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

**III. The CIPA Standard**

Although CIPA does not alter established principles of discovery or create new privileges against disclosure, it clarifies the structure through which courts apply the existing common-law privilege against the disclosure of state secrets. *Aref*, 533 F.3d 72 at 78; *see also Zuckerbraun v. Gen. Dynamics Corp.*, 935 F.2d 544, 546 (2d Cir. 1991) (describing the evidentiary privilege that "allows the government to withhold information from discovery when disclosure would be

---

[3] *See also* S. Rep. No. 96-823 at 6 (1980) ("When pertaining to discovery materials, [section 4] should be viewed as clarifying the court's powers under Federal Rule of Criminal Procedure 16(d)(1). This clarification is necessary because some judges have been reluctant to use their authority under the rule although the advisory comments of the Advisory Committee on Rules states [sic] that 'among the considerations taken into account by the court' in deciding on whether to permit discovery to be 'denied, restricted or deferred' would be 'the protection of information vital to the national security.'")

inimical to national security"); *United States v. Klimavicious-Viloria*, 144 F.3d 1249, 1261 (9th Cir. 1998) (applying the state-secrets privilege to CIPA cases); *United States v. Yunis*, 867 F.2d 617, 621-23 (D.C. Cir. 1989) ("CIPA creates no new rule of evidence regarding admissibility."). Comparing the state-secrets privilege to the "informer's privilege" discussed by the Supreme Court in *Rovario v. United States*, 353 U.S. 53 (1957), the Second Circuit has held that the privilege can be overcome when the evidence at issue is "helpful or material to the defense" of an accused. *Aref*, 533 F. 3d at 80; *see also Klimavicious-Viloria*, 144 F.3d at 1261; *Yunis*, 867 F.2d at 622.

In light of the "helpful or material to the defense" standard for overcoming the state-secrets privilege, the Second Circuit has established a three-part test for evaluating protective orders under section 4 of CIPA. A district court must assess whether (1) the information is discoverable, (2) the state-secrets privilege applies, and (3) the information is helpful or material to the defense:

> [T]he district court must first decide whether the classified information the Government possesses is discoverable. If it is, the district court must then determine whether the state-secrets privilege applies because: (1) there is a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged, and (2) the privilege is lodged by the head of the department which has control over the matter, after actual personal consideration by that officer.
>    If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, *i.e.*, useful to counter the government's case or to bolster a defense.

*Aref*, 533 F.3d at 80 (internal citations omitted); *see also Abu-Jihaad*, 630 F.3d at 139-43; *Stewart*, 590 F.3d at 131; *In re Terrorist Bombings*, 552 F.3d at 125.

The discoverability of evidence is governed by Federal Rule of Criminal Procedure 16, by statute, and by common law. Standards determining discoverability vary according to the type of evidence, the methods through which it was gathered, and other factors. At its most

5

inclusive, Rule 16 requires the government to produce any written or recorded statements made by the defendant and in the government's possession if the statements are "relevant." Fed. R. Crim. P. 16(a)(1)(B)(i).

If a court finds that the state-secrets privilege does apply, then the evidence must be more than just relevant in order for fairness to require that the privilege give way. *See Yunis*, 867 F.2d at 623 ("We hold, in short, that classified information is not discoverable on a mere showing of theoretical relevance in the face of the government's classified information privilege."). The state-secrets privilege must give way only where the information at issue rises to the level of being <u>helpful or material to the defense</u>. *See Roviaro*, 353 U.S. at 60-61 ("Where the disclosure . . . is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way."); *Aref* 533 F.3d at 79-80 ("We . . . adopt the *Roviaro* standard for determining when the Government's privilege must give way in a CIPA case."); *Abu-Jihaad*, 630 F.3d at 29 ("In determining when a defendant's right to present a defense displaces the state-secrets privilege, we apply the test announced in *Roviaro*. . . ."). Despite the requirement that it must be more than just relevant, in order to be helpful or material to the defense, "evidence need not rise to the level that would trigger the Government's obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), to disclose exculpatory information." *Aref*, 533 F.3d at 80.

Evidence that the government does not intend to use in its case-in-chief is material or helpful if it could be used to counter the government's case or to bolster a defense. *United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993). Thus although information that is in any way exculpatory is obviously both material and helpful to the defense, so too is information that, even though not exculpatory, could still serve either to counter the government's case, for example by

discrediting a prosecution witness, or to bolster a defendant's arguments, for example by serving as a prior consistent statement corroborating a defense the accused may raise. In assessing the materiality or helpfulness of withheld information, a court "considers not only the logical relationship between the information and the issues in the case, but also the importance of the information in light of the evidence as a whole." *In re Terrorist Bombings*, 552 F.3d at 125 (internal quotations omitted). Information is sufficiently helpful to the defense (viewed against the discovery that the defense has already been provided) when the information creates "a reasonable likelihood that the testimony could affect the judgment of the trier of fact." *United States v. Valenzuela-Bernal*, 458 U.S. 858, 874 (1982); *Yunis*, 867 F.2d at 624.

## IV. The Proposed Protective Order

The Court has reviewed, *in camera*, the classified Motion, the Government's Memorandum of Law in Support of the Motion for a Protective Order (hereinafter the "brief"), the relevant declarations of United States government officials, and certain documents in the Court's possession. The Court lacks the resources to review every single document that the Government holds. In its brief, the Government describes in detail the materials it possesses and includes samples of those materials. The Court has erred on the side of caution by requesting the Government to produce further materials that the Court believed might be relevant. The Court's determinations are based on these materials in its possession.

The Government asserts that all evidence that would be material or helpful to the defense has been produced to the Defendants, either in an unclassified form or in classified form subject to the protections of CIPA. The Government seeks a determination from the Court that the remainder of the materials, falling within certain categories described in the brief, is not discoverable. The Court is not able to confirm whether or not every document that the

Government possesses actually fits within these categories; nevertheless, based on the material it has reviewed, the Court believes that the Government has diligently and in good faith undertaken its obligation to produce any discoverable documents and has also accurately represented the contents of the documents in its summaries in its brief.  *See Zazi*, 2011 WL 2532903 at *5.

The Court will discuss the materials in the Government's possession by reference to the sections of the Government's brief that pertain to those materials, in order to facilitate appellate review of the Court's determinations.  The Court regrets that these references will not be illuminating to the Defendants or to the public, but sees no other way to proceed in light of the classified nature of the information.  *United States v. Abu-Jihaad*, No. 07 Cr. 57, 2008 WL 346121, at *2 (D. Conn. Feb. 4, 2008) (Kravitz, J.).

At the outset, the Court finds that all of the materials in the Government's possession were determined to be classified by appropriate United States government officials pursuant to Executive Order 13526 (75 Fed. Reg. 707 (Jan. 5, 2010)).  The officials determined that the materials require protection against unauthorized disclosure for reasons of national security and have described in depth the reasons for the information's classification and the harm that would result from disclosure.

Materials Described in Part V:  The materials described by the Government in Part V are not discoverable under Rule 16, *Brady*, *Giglio*, or statute as they are not relevant to the issues in the case.  The materials are neither material nor helpful to any conceivable defense that might be advanced in response to the charges faced by the Defendants.  Accordingly, the Defendants have no legitimate need to access the information, and the Court confirms that the Government need not produce this material to the defense.

Materials Described in Part VI:  The declaration attached to the brief demonstrates that the state-secrets privilege for these materials has been lodged by the head of the department that has control over the matters, after actual personal consideration by that officer.  Based on its review of the brief, the declarations, summaries of the materials, and samples of the materials themselves, the Court is convinced that there is a reasonable danger that disclosure of the evidence would expose matters that could cause grave damage to the national security.  The state-secrets privilege is thus properly invoked.

The Court requested copies of all of the materials described in Part VI that could be relevant, and the Court has reviewed them carefully.  The Court also asked the Government to review these materials again to reconsider whether any of the materials could be helpful to the defense, given that the Government now has a clearer sense of how it intends to present its case at trial and possible defenses.  The Government reviewed the documents and found nothing material or helpful to the defense.  Independently, this Court finds that although these documents contain information relevant to the case, the documents, considered both individually and as a whole, contain no information that would be useful to counter the Government's case, and would not support any conceivable defense.  Nothing in these classified documents relates to the innocence of either of the Defendants.  To the contrary, the materials support the Government's case both circumstantially and directly.  Considering the logical relationship between the information and the issues in the case as well as the importance of the information in light of the evidence as a whole, the Court finds that none of the classified materials described in Part VI are material or helpful to the defense.

Because the state-secrets privilege has been properly invoked and none of the materials described in Part VI are material or helpful to the defense, the Government's motion for a

protective order authorizing the withholding of the classified materials described in Part VI from discovery is granted pursuant to Section 4 of CIPA and Rule 16(d)(1).

<u>Materials Described in Part VII</u>:  The majority of the materials described by the Government in Part VII are irrelevant to any conceivable defense that might be advanced in response to the charges faced by the Defendants, and are therefore not discoverable.  Some material, however, is relevant.  The materials that are relevant and arguably helpful to the defense, have been produced to the Defendants in either unclassified or classified forms.  The Court has reviewed those documents and finds that the versions produced match the documents in the Government's possession in all material respects.

The declaration attached to the brief demonstrates that the privilege with regard to the materials described in Part VII has been lodged by the head of the department that has control over those materials, after that officer personally reviewed the materials.  Based on its review of the brief, the declarations, and the materials themselves, the Court is convinced that there is a reasonable danger that disclosure of the evidence would expose matters that could cause serious damage to the national security.  The state-secrets privilege is thus properly invoked.

The Court requested and carefully reviewed a number of documents that were not produced to the Defendants but that the Court believed might be relevant, and possibly discoverable.  After this thorough review, the Court is convinced that, although these materials are relevant to the case, they would neither counter the Government's case nor bolster any defense.   Nothing in the classified documents described in Part VII that have not already been produced relates to the innocence of either of the Defendants.  Considering the logical relationship between the information and the issues in the case, as well as the importance of the information in light of the evidence as a whole, the Court finds that the classified information

described in Part VII that has not already been produced to the Defendants is neither material nor helpful to the defense.

Because the state-secrets privilege has been properly invoked and none of the materials described in Part VII that have not already been produced are material or helpful to the defense, the Government's motion for a protective order authorizing the withholding of the classified materials described in Part VII from discovery is granted pursuant to Section 4 of CIPA and Rule 16(d)(1).

## V. Conclusion

For the foregoing reasons, the Court GRANTS the Government's Motion for a Protective Order with Respect to Certain Classified Materials. The Government is authorized to withhold the classified materials described with particularity in the brief from discovery. The Government submission is hereby sealed, and shall remain preserved in the custody of the Court Security Officer to be made available to the Second Circuit for its review in the event of any appeal.

SO ORDERED.

DATED:   New York, New York
         February 24, 2012

_____
KIMBA M. WOOD
United States District Judge