

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 2, 2016

<u>BY HAND AND ELECTRONICALLY FILED</u>

The Honorable Kimba M. Wood
United States District Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 1910
New York, New York 10007

Re:  <u>Sabirhan Hasanoff</u> v. <u>United States</u>
     **14 Civ. 7892 (KMW); 10 Cr. 162 (KMW)**

Dear Judge Wood:

The Government writes respectfully in response to the Court's Order, dated August 31, 2016, concerning the petition for habeas relief filed by Sabirhan Hasanoff (the "Habeas Petition"). As directed by the Court, this submission addresses Hasanoff's allegation of ineffective assistance of his prior counsel "when questioned by the Court [at sentencing] about whether $40,000 was seized by the U.S. Government or the Yemeni government."

The Habeas Petition sought relief alleging ineffective assistance of his former counsel, Joshua Dratel, Esq., on numerous grounds, including Mr. Dratel's failure to move to suppress suspected warrantless surveillance, Mr. Dratel's failure to argue that the Government violated its *Brady* obligations, and Mr. Dratel's commission of various alleged errors at sentencing. On December 12, 2014, the Government opposed the Habeas Petition arguing, in substance, that Mr. Dratel engaged in no deficient performance in the course of representing Hasanoff and, in any event, Hasanoff cannot establish prejudice in light of the overwhelming evidence against him and the below-Guidelines sentence he received.

With respect to the alleged deficiencies at sentencing, Hasanoff asserted in the Habeas Petition: "At page 12 of the sentencing transcript, Dratel erroneously states 'No, no' when asked by the Court whether the $40,000 was seized from 2 Yemeni's by the American Government. In fact the Government has never disclosed which Government confiscated the $40,000." Affidavit of Sabirhan Hasanoff, dated Sept. 22, 2014, ("Hasanoff Aff.") at ¶ 15.[1] Presumably, Hasanoff is suggesting that the United States Government seized money from his co-conspirators and his

---

[1] While the Government's opposition to the Habeas Petition argued that Mr. Dratel did not engage in deficient performance at sentencing, we failed to address this specific exchange at sentencing. The Government apologizes for that oversight and respectfully requests that the Court accept this submission to address that issue.

The Honorable Kimba M. Wood
September 2, 2016

forfeiture order should have been reduced accordingly.  As with Hasanoff's other allegations of ineffective assistance, his allegation with respect to Mr. Dratel's colloquy with the Court concerning this supposed seizure lacks merit and should be rejected.  As discussed below, the United States Government never seized any money from Hasanoff or his co-conspirators (as Mr. Dratel accurately represented to the Court at sentencing), and therefore there was no basis for reduction of the forfeiture amount.  Thus, this allegation, as with the remainder of the allegations in the Habeas Petition, can and should be rejected without a hearing.

      At Hasanoff's sentencing hearing on September 30, 2013, the following colloquy occurred between Mr. Dratel and the Court:

| | |
|---|---|
| THE COURT: | . . . . Would you like speak to forfeiture and the fine? |
| MR. DRATEL: | Yes.  Forfeiture is an issue that it's -- with respect to the numbers, it's -- you know, we would think that the correct amount would be 46,000, and then we think there are deductions that should be -- First of all, there was money seized by the government that ought to be deducted. |
| THE COURT: | How much? |
| MR. DRATEL: | Just one second, your Honor.  Okay.  Here are the numbers.  The government -- we have the government at 67.  Then you would reduce that by the contribution of the cooperating co-defendant, Wesam,[2] at 23-and-a-half thousand. |
| THE COURT: | Didn't your client pass the money on to the terrorist facilitators? |
| MR. DRATEL: | Yes.  Yes, your Honor.  But in a sense, that -- In the confiscations, there were 20,000, and there was another 4,000 in his possession and 16,000 relating to an automobile, and then we have another 1,500 that went for -- that was in the same basket of money but that did not go to that purpose.  It went for someone suffering from cancer.  So -- |
| THE COURT: | You're saying the government has seized a total of $40,000?  I'm sorry-- yes, $40,000? |
| MR. DRATEL: | Yes, yes. |
| THE COURT: | Okay. |

---

[2] Although co-defendant Wesam El-Hanafi was referred to as "the cooperating co-defendant," El-Hanafi, like Hasanoff, pled guilty pursuant to a non-cooperation plea agreement.

The Honorable Kimba M. Wood
September 2, 2016

MR. DRATEL:        Your Honor, it may not be -- some of it may have been seized by the
                   Yemeni government in terms of when they arrested the two persons
                   involved.

THE COURT:         Do you know the difference?

MR. DRATEL:        I do not because I don't know what the relationship is in terms of --
                   just one second.  This is from the detainees in Yemen; so it was
                   complicated by the Yemeni government. One had 20,000, one had
                   4,000, one had 16,000.

THE COURT:         So none of that was seized by the U.S. government?

MR. DRATEL:        No, no.

Transcript, *United States* v. *Hasanoff*, No. 10 Cr. 162 (KWM), September 30, 2013, ("Sent. Tr.")
at 11-12.  The Court ultimately imposed an order of forfeiture in the amount of $70,000, *id.* at
22, which represented the amount of money Hasanoff and his co-conspirators sent to their
terrorist contacts (approximately $67,000) and the value of other items they sent.

          As reflected in the above colloquy, Mr. Dratel seemed to initially state that a government
(presumably referring to the United States Government) seized about $40,000 from his client,
but he very quickly corrected himself and clarified that no money was in fact seized by the
United States Government.  Mr. Dratel's initial statement seemed to be based on reporting from
Hasanoff's Yemeni-based co-conspirators, known as "Suffian" and "the Doctor."  A review of
the FBI's reports of its interviews of these two detainees – which were attached to the
Government's opposition to the Habeas Petition as Exhibits A and B, respectively – sheds light
on the source of Mr. Dratel's apparent confusion, as well as the accuracy of Mr. Dratel's ultimate
statement that the United States Government did not seize any money from Hasanoff or his co-
conspirators.

          First, in response to the Court's inquiry about money that Hasanoff passed to the terrorist
facilitators, Mr. Dratel stated: "In the confiscations, there were 20,000, and there was another
4,000 in his possession and 16,000 relating to an automobile, and then we have another 1,500
that went for -- that was in the same basket of money but that did not go to that purpose.  It went
for someone suffering from cancer."  Sent. Tr. at 11-12.  Here, Mr. Dratel appeared to be
referring to statements the Doctor made to the FBI.  The Doctor discussed receiving $20,000
from co-defendant Wesam El-Hanafi (referred to as "Khaled") and explained how that money
was utilized:

          [The Doctor] indicated that $16,000 of the $20,000 received from Khaled was used
          to buy two cars (NFI[3]).  Subject bought one car in early November 2008 and one in

_____
          [3] "NFI" means "no further information."

3

The Honorable Kimba M. Wood
September 2, 2016

> December 2008.  The remaining $4,000 was in his possession.  $2,000 went to [redacted] (NFI).  And $1,500 went to help [the Doctor's] Egyptian friend who had cancer.

Exh. A at 23.  The Doctor did not state how much, if any, of this money was seized at the time of his arrest.  Moreover, the Doctor was not arrested by U.S. law enforcement, but rather by foreign authorities.  If any money was seized from the Doctor at the time of his arrest, presumably that would have been done by those foreign authorities.

Second, Suffian reported to the FBI that $20,000 of the funds provided by El-Hanafi and Hasanoff was seized from him at the time of his arrest by foreign authorities.  Suffian stated that "Khaled" (*i.e.*, El Hanafi) provided $45,000 to an unidentified co-conspirator who, in turn, delivered the money to Suffian.  *See* Exh. A at 9.  Suffian further explained that, of that $45,000, Suffian retained $20,000, which was taken from Suffian at the time of his arrest.  *See id.* at 10.  Like the Doctor, Suffian was arrested by foreign, not U.S. Government, authorities.[4]  In the event Mr. Dratel may have initially been under the misimpression that this money was seized by the United States Government, he quickly clarified any misunderstanding.  *See* Sent. Tr. at 12 ("some of it may have been seized by the Yemeni government in terms of when they arrested the two persons involved"); *id.* (confirming that no money was seized by the United States Government).

To be sure, the undersigned have confirmed with the case agents that the United States did not seize any currency from Hasanoff, El-Hanafi, or any co-conspirator during the course of the investigation, nor did the United States receive any money that was seized from co-conspirators by foreign authorities.  Moreover, the undersigned has confirmed that there is no record any seizures or forfeitures from Hasanoff or El-Hanafi, whether judicial or administrative, in the Department of Justice's Consolidated Asset Tracking System (*see* https://www.justice.gov/jmd/major-information-systems).  Mr. Dratel therefore accurately reported to the Court that none of the money seized from Suffian or the Doctor was seized by the U.S. government.  *See* Sent. Tr. at 12 ("THE COURT: So none of that was seized by the U.S. government?"; "Mr. Dratel: "No, no.").  Thus, regardless of whether Mr. Dratel was initially under any misimpression, and regardless of the basis for that misimpression, what matters is that, in the end, no money was seized by the United States Government from either of the defendants or their co-conspirators.  Therefore, there would have been no basis to reduce Hasanoff's forfeiture below the court-ordered amount of $70,000.

Accordingly, during the cited colloquy at sentencing, Mr. Dratel did not engage in any deficient performance, and ultimately correctly represented that the United States Government

---

[4] Hasanoff alleges that "the Government never disclosed which Government confiscated the $40,000."  Hasanoff Aff. ¶ 15.  Which foreign government (if any) seized money from Suffian is irrelevant to the issues raised in the Habeas Petition.  All that is relevant is whether the United States Government seized any money from co-conspirators that should have counted toward a reduction of Hasanoff's forfeiture amount – and the United States Government did not.

The Honorable Kimba M. Wood
September 2, 2016

seized no money from Hasanoff or his co-conspirators.  Moreover, because the United States
Government did not seize any money, and therefore there was no basis to reduce the order of
forfeiture, Hasanoff could have suffered no prejudice.

   Thus, for the above reasons, and for the reasons discussed in the Government's
opposition brief, the Habeas Petition should be denied in its entirety.

       Respectfully submitted,

       PREET BHARARA
       United States Attorney


     By: _____/s/_____
       John P. Cronan
       Michael D. Lockard
       Aimee Hector
       Assistant United States Attorneys
       Tels.: (212) 637-2779/-2193/-2203


cc:  B. Alan Seidler
   *By ECF and electronic mail*