UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,           :

                                    :

                                    :

      v.                              :   Case No. 1:10-CR-00162 (KMW)

                                    :

SABIRHAN HASANOFF,                  :
          Defendant.

MOTION FOR COMPASSIONATE RELEASE
PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

    Defendant, Sabirhan Hasanoff, pro se, respectfully moves this Court for an order reducing his sentence to time served based on the "extraordinary and compelling reasons" discussed below, pursuant to the amended 18 U.S.C. § 3582(c)(1)(A)(i).

## INTRODUCTION

    Hasanoff is 10-plus-years into a 18-year prison term for conspiring and providing and attempting to provide material support and resources to a terrorist group. Hasanoff makes no excuses for his conduct and accepts full responsibility for his wrongful actions. Nothing submitted by Hasanoff or on his behalf is intended to diminish or detract from the serious nature of his offense, his complete and unconditional acceptance of responsibility, or his regret for his unlawful actions. Hasanoff's acceptance of responsibility, as well as his deep sense of remorse, is unqualified.

Hasanoff, 44 years old, is currently incarcerated at the Federal Correctional Institution at Otisville ("FCI-Otisville") where the COVID-19 virus has reached. On April 28, 2020, a request was submitted to the Warden of FCI-Otisville asking that he move this Court for a reduction of Hasanoff's sentence under the Federal Compassionate Release statute, 18 U.S.C. § 3582(c)(1)(A)(i), based on the "extraordinary and compelling reason" that his family circumstances due to the COVID-19 outbreak has left him the sole caregiver for his mother and the sole provider for his wife and children. On April 12, 2020, the COVID-19 outbreak caused Hasanoff's father, Abithan Hasanoff, his death. Hasanoff's father supported and cared for his ailing wife, Hasanoff's mother, who has early onset Alzheimers, and also supported Hasanoff's wife and three (3) children (ages 10-16). Hasanoff's father death has left Hasanoff's wife and children in dire financial straits and his mother both without financial support and a caregiver. Hasanoff has become the sole available caregiver for his mother and the sole provider for his wife and kids.

Hasanoff has an extraordinary record of rehabilitation in prison. That record includes sterling prison conduct, attending prison courses, completing vocational and educational courses. Hasanoff's record of rehabilitation is also extraordinary, and there is no concern that he would be a danger to the public if released.

2

These circumstances lead Hasanoff to seek a sentence reduction under the federal compassionate release statute. 18 U.S.C. § 3582(c)(1)(A)(i). After the changes made to the compassionate release statute by the First Step Act, district courts no longer require a motion from the Director of the BOP to resentence federal prisoners under § 3582(c)(1)(A)(i). This Court may resentence if a prisoner files a motion and establishes extraordinary and compelling reasons for a sentence reduction. Those extraordinary and compelling reasons are present here because the COVID-19 outbreak has changed Hasanoff's family circumstances, his risk of contracting COVID-19 at Otisville has increased, and Hasanoff has compiled a remarkable record of rehabilitation showing that, if released, he is no danger to the public. Hasanoff has thus presented extraordinary and compelling reasons for this Court to resentence him to time served in order to provide and care for his mother and his wife and children.

More than 30 days have elapsed between Hasanoff's request for reduction in sentence to the warden and a response. Thanks to the amendments to § 3582(c)(1)(A) that were enacted as part of the First Step Act, See P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018), the Court is now empowered to reduce Hasanoff's sentence, and I ask the Court to do just that for the reasons set forth below.

## FACTUAL BACKGROUND

On June 4, 2012, Hasanoff, pled guilty to a two-count superseding information charging him with (1) providing and

3

attempting to provide material support and resources to a terrorist group, in violation of 18 U.S.C. § 2339B, and (2) conspiring to provide material support and resources to a terrorist group, in violation of 18 U.S.C. § 371. **United States v. Hasanoff**, No. 1:10-CR-00162 (KMW) (ECF Nos. 102, 106). Hasanoff was sentenced to 180 months' imprisonment on Count One to be served consecutively to 36 months on Count Two, for a total of 216 months (18-years). Hasanoff remains incarcerated with an expected release date of September 26, 2025.

Hasanoff has served almost 70% of his sentence. While in custody his conduct has been exemplary and he has been a model inmate. He is the inmate liaison with senior staff for the Muslim Community at FCI-Otisville, and has taught classes in the Education Department. Hasanoff has also been working with Rabbi Richter on a deradicalization program at FCI-Otisville for inmates convicted of terrorism offenses.

On April 12, 2020, the COVID-19 outbreak caused Hasanoff's father, Abithan Hasanoff, his life. (Ex. A, Death Certificate). Hasanoff's father supported and cared for his ailing wife Saiyara Hasanoff, Hasanoff's mother, who has early onset alzheimers, spinal degenerative disc disease/spinal arthrosis, rheumatoid arthritis, and is awaiting a total right knee replacement. She currently takes several medications for pain and memory loss. Due to these conditions Mrs. Hasanoff is partially immobile. Since Hasanoff's father passing, Hasanoff's mother has been living alone in Brooklyn, NY, with no caregiver to assist her.

4

Hasanoff's mother requires care in most aspects of her activity of daily living. (Ex. B, Saiyara Hasanoff Affidavit). Hasanoff's father also supported Hasanoff's wife, Wahida Hasanoff and their three (3) children (ages 10-16). Hasanoff's wife and kids have been in dire financial difficulty after Hasanoff's father's death due to the COVID-19 outbreak. (Ex. C, Wahilda Hasanoff Affidavit).

COVID-19's rapid spread through the BOP system is an unprecedented public health crisis. Beginning in March 2020 FCI-Otisville suffered an outbreak of COVID-19 with well over two dozen inmate and staff infections. (https://www.bop.gov/coronavirus/index.jsp). These numbers are likely under counted due to lack of wider testing--FCI-Otisville only tests symptomatic inmates. With at least 3 confirmed cases in Hasanoff's housing unit, he is at a high risk of contracting COVID-19. Hasanoff's father, who passed away from COVID-19, had a pre-existing Thoracic Aortic Aneurysm, a condition that may be genetically inherited. One of the percursors of Thoracic Aortic Aneurysm is high blood cholesterol which Hasanoff has had for the past several years and has been taking Pravastatin to lower his blood cholesterol level. Hasanoff's herniated disc in L-2 and pinched nerve (Ex. D), have worsened to the point he is constantly taking prescribed pain medication to alleviate his condition. Hasanoff who is the sole available caregiver and provider for his mother and wife and children, it would be a devasting blow if he would die from COVID-19 especially after

5

losing the patriarch of the family to the same virus only two months ago.

On April 28, 2020, a written request was submitted to the Warden of FCI-Otisville asking that he move this Court for a reduction of Hasanoff's sentence under § 3582(c)(1)(A)(i). (Ex. H, Compassionate Release Request). More than 30 days have elapsed between Hasanoff's reduction in sentence request to the warden and a response.

## DISCUSSION

The Court now has the authority to reduce Hasanoff's sentence based on the extraordinary and compelling circumstances presented here. First, it has the jurisdiction to hear this motion because more than 30 days have elapsed between Hasanoff's reduction in sentence request to the warden and a response. Second, the changes to 18 U.S.C. § 3582(c)(1)(A)(i) made by the First Step Act have finally vested the Court with the authority to decide when extraordinary and compelling circumstances warrant a sentence reduction. Third, the family circumstances presented here cry out for a sentence reduction.

A. **The Court Has Jurisdiction to Grant Release for Extraordinary and Compelling Reasons.**

The compassionate release statute was first enacted as part of the Comprehensive Crime Control Act of 1984. It provided that a district court could not modify a final term of imprisonment except in four situations, one of which was the existence of "extraordinary and compelling reasons" warranting the reduction, as determined by the sentencing court. But although the courts had the final decision-making authority over whether a sentence

6

would be reduced, the statute imposed a gatekeeper--that authority could be invoked only upon a motion by the Director of the BOP. Without such a motion, sentencing courts were powerless to reduce a prisoner's sentence, even if the court concluded that extraordinary and compelling reasons warranted the reductions. 18 U.S.C. § 3582(c)(1)(A)(i); see also P.L. 98-473, 98 Stat. 1837 (Oct. 12, 1984).

That changed when Congress enacted the First Step Act, which amended § 3582(c)(1)(A). See P.L. 115-391, 132 Stat. 5194, at § 603 (Dec. 21, 2018). Under the amended statute, a court can now reduce a sentence for "extraordinary and compelling reasons" in two circumstances: (i) if the Director of the BOP files a motion requesting such relief; or (ii) "upon motion of the defendant," if the defendant has fully exhausted all administrative remedies to appeal the BOP's failure to bring a motion, or if 30 days have lapsed "from the receipt of such a request by the warden of the defendant's facility," whichever is earlier. 18 U.S.C. § 3582(c)(1)(A); see also United States v. Cantu, No. 1:05-CR-458-1, 2019 WL 2498923, at *3 (S.D. Tex. June 17, 2019)("Under the newly amended § 3582(c)(1)(A) [the defendant] has standing to bring this motion because more than 30 days elapsed between his reduction-in-sentence request to the warden and a response."); United States v. Cantu-Rivera, No. CR H-89-204, 2019 WL 2578272, at *1 (S.D. Tex. June 24, 2019)(defendant's "petition . . . meets the requirement of a lapse of 30 days from the receipt by the warden of the defendant's facility . . . The Court therefore has

authority to address the motion of the defendant."). As noted above, Hasanoff's request to the warden at his facility was submitted on April 28, 2020. More than 30 days have elapsed between Hasanoff request to the warden and a response. Accordingly, Hasanoff is entitled to bring his motion directly to the Court pursuant to 18 U.S.C. § 3582(c)(1)(A), and this Court is vested with the jurisdiction to rule on the requested relief.

**B.    The Requested Relief Is Consistent with the Text of the Statute and the Sentencing Commission's Policy Statements.**

**1.    Congress Did Not Limit "Extraordinary and Compelling Reasons" to a Specific, Enumerated Set of Circumstances.**

Congress did not define what would constitute an "extraordinary and compelling reason" warranting a reduction of a sentence under § 3582(c). Indeed, the legislative history confirms that it intended to grant federal sentencing courts broad discretion to make those determinations on a case-by-case basis, and to reduce fundamentally unfair sentences where such reasons exist.

Congress' initial goal in passing the Comprehensive Crime Control Act was to abolish federal parole and create a "completely restructured guidelines sentencing system." S. Rep. No. 98-225, at 52, 53 n.74 (1983). But with the elimination of parole as a corrective measure in cases where early release is warranted, Congress recognized the need for an alternative review process. It therefore allowed for judicial reduction of certain sentences under § 3582(c):

> The Committee believes that there may be unusual cases in which an eventual reduction in

8

> the length of a term of imprisonment is
> justified by changed circumstances. These would
> include cases of severe illness, cases in which
> other extraordinary and compelling
> circumstances justify a reduction of an
> unusually long sentence, and some cases in
> which the sentencing guidelines for the offense
> of which the defend[ant] was convicted have
> been later amended to provide a shorter term of
> imprisonment.

Id. at 55-56. Put differently, rather than having the Parole
Commission review every federal sentence, Congress decided to let
sentencing courts decide, in a far narrower band of cases
presenting extraordinary and compelling circumstances, if "there
is a justification for reducing a term of imprisonment." Id. at
56.

The situations listed in § 3582(c) were thus intended to
serve as "safety valves for modification of sentences," enabling
sentence reductions when justified by factors that previously
could have been addressed through the (now abolished) parole
system. Id. at 121. This approach was intended to keep "the
sentencing power in the judiciary where it belongs," rather than
with a federal parole board, and it permitted "later review of
sentences in particularly compelling situations." Id. Notably,
Congress imposed no limitations on courts' authority to make such
determinations, declining to define what constitutes
"extraordinary and compelling reasons" or to otherwise constrain
judges' discretion. The mandate was simple: If extraordinary and
compelling circumstances were present, they would "justify a
reduction of an unusually long sentence." S. Rep. No. 98-225, at
55-56.

9

Unfortunately, the establishment of the BOP as a gatekeeper effectively eliminated the safety valve. The BOP, which is of course part of the Department of Justice, hardly ever opened the gate. As a result, Congress, through the First Step Act, allowed direct access to the sentencing court once an inmate's request to the BOP has been exhausted.

2. **The U.S. Sentencing Commission Has Not Limited "Extraordinary and Compelling Reasons" for Compassionate Release to Medical, Age-Related, or Family Circumstances.**

When enacting § 3582(c), Congress delegated the responsibility for determining what constitutes "extraordinary and compelling reasons" to the U.S. Sentencing Commission (the "Commission"). <u>See</u> 28 U.S.C. § 994(t)("The Commissiion . . . shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."); <u>see also</u> 28 U.S.C. § 992(a)(2)(the Commission shall promulgate general policy statements regarding "the sentence modification provisions set forth in section . . . 3582(c) of title 18"). The resulting policy statement by the Commission sets forth the following factual considerations: (A) the "Medical Condition of the Defendant," including terminal illness and other serious conditions and impairments; (B) the "Age of the Defendant," for those 65 and older with serious deterioration related to aging who have completed at least 10 years or 75 percent of the term of impriosnment; (C) the "Family Circumstances of the Defendant," where a child's caregiver or spouse dies or becomes incapacitated

10

without an alternative caregiver; and (D) "Other Reasons," when the Director of the BOP determines there is "an extraordinary and compelling reason other than, **or in combination with,** the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(A). It is under this catch-all provison and the "Family Circumstances" that Hasanoff seeks relief. Additionally, the commentary makes clear that the extraordinary and compelling reasons "need not have been unforeseen at the time of sentencing in order to warrant a reduction in the term of imprisonment." U.S.S.G. § 1B1.13, Application Note 2. In other words, even if an "extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court, [that fact] does not preclude consideration for a [sentence] reduction." Id.

As the above language makes clear, extraordinary and compelling reasons for a sentence reduction may exist even when an inmate is not elderly, ill, or facing complicated family circumstances. And though the policy statement--which has not been amended since the passage of the First Step Act--vests the Director of the BOP with the authority to determine when such "other reasons" might warrant a reduction in a particular case, that language is now irreconcilable with the revised statute, which permits a defendant to bring a § 3582 motion to the Court without any response from the BOP or even if the BOP expressly decides that no reasons warrant a reduction of sentence. Accordingly, that aspect of the commentary is not binding on the

11

courts for two reasons: (1) the Guidelines are advisory only, **see United States v. Booker**, 543 U.S. 220 (2005); and (2) **it is** inconsistent with the text and the undisputed purpose of the First Step Act. **See United States v. Da Cai Chen**, 127 F.3d 286, 291 (2d Cir. 1997)(commentary that relates to a statute, or to a guideline that mirrors a statute (as here), is not entitled to deference); **see also United States v. Pierninanzi**, 23 F.3d 670, 683 (2d Cir. 1994). Indeed, at least three district courts, since the passage of the First Step Act, have observed that § 1B1.13 "has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release," **United States v. McGraw**, 2019 WL 2059488, at [*]2 (S.D. Ind. May 9, 2019), and "[b]ecause the current version of the Guideline policy statement conflicts with the First Step Act, the newly-enacted statutory provisions must be given effect." **Cantu-Rivera**, 2019 WL 2578272, at [*]2 n.1; **see also Cantu**, 2019 WL 2498923, at [*]4 ("Given the changes to the statute, the policy-statement provision that was previously applicable to 18 U.S.C. § 3582(c)(1)(A) no longer fits with the statute and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of the sentence-modification provisions under § 3582.").

The Court's authority to reduce Hasanoff's sentence is not only consistent with the statute, but also with the language in the policy statement, which makes clear that "[t]he court is in a unique position to determine whether the circumstances warrant a

reduction (and, if so, the amount of reduction)" and encouraging the filing of a motion for compassionate release where a defendant "meets any of the circumstances set forth in [the] Application Note." As mentioned above, in amending the language of 18 U.S.C. § 3582(c)(1)(A), Congress finally empowered <u>courts</u> to make this critical determination, even in the face of a BOP determination that a defendant's case is not extraordinary or compelling.

Thus, a district court in Texas held as follows:

> [T]he correct interpretation of § 3582(c)(1)(A)--based on the text, statutory history and structure, and consideration of Congress's ability to override any of the Commission's policy statements 'at any time' [. . .]--is that when a defendant brings a motion for sentence reduction under the amended provision, the Court can determine whether any extraordinary and compelling reasons other than those delineated in U.S.S.G. § 1B1.13 cmt. N.1(A)-(C) warrant granting relief.

<u>Cantu</u>, 2019 WL 2498923, at *5. <u>See also</u> <u>United States v. Ebbers</u>, 2020 WL 91399, at *4 n.6 (S.D.N.Y. Jan. 8, 2020)("[T]he First Step Act reduced the BOP's control over compassionate release and vested greater discretion with courts. Deferring to the BOP would seem to frustrate that purpose."); <u>United States v. Beck</u>, 2019 WL 2716505, at *6 (M.D.N.C. June 28, 2019)("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)."). This Court, therefore, may make an independent assessment of Hasanoff's case in considering whether

13

extraordinary and compelling reasons warrant the reduction of his sentence.

Since the passage of the First Step Act, courts have found that they may rely on this "catch-all" provision to determine eligibility, even in cases where the BOP has made no determination regarding an inmate's eligibility for compassionate release. See, e.g., **United States v. Reyes**, 2020 WL 1663129, at *2 (N.D. Ill. Apr. 3, 2020)(granting compassionate release motion under the catch-all provision in the absence of any BOP finding regarding eligibility); **United States v. Owens**, No. 97-CR-2546-CAB, ECF No. 93 at 4 (S.D. Cal. Mar. 20, 2020)("In the wake of the First Step Act, numerous courts have recognized the court can determine whether extraordinary and compelling reasons exist to modify a sentence--and may do so under the 'catch all' provision similar to that recognized in U.S.S.G. Manual § 1B1.13 n.1(D) . . ."). As a result, the policy statement in the Sentencing Guidelines does not prevent this Court from making an independent determination that Hasanoff's unique set of circumstances is an extraordinary and compelling reason justifying his release.

3. **Extraordinary and Compelling Circumstances Warrant a Reduction in Hasanoff's Sentence.**

Given Hasanoff's extraordinary family circumstances, the death of his father due to COVID-19 which left Hasanoff the sole available caregiver for his ailing mother and the sole provider for his wife and children, his increased risk of contracting COVID-19 at FCI-Otisville, and his remarkable record of rehabilitation showing that, if released, he is no danger to the

14

public, presents extraordinary and compelling reasons for a reduction in Hasanoff's sentence.

In addition, a motion for relief under 18 U.S.C. § 3582(c)(1)(A)(i) requires a court to consider other factors that may warrant relief, including the defendant's rehabilitation, the sentencing disparities with his co-defendants, and other factors bearing on the person Hasanoff is today. **See also Cantu-Rivera**, 2019 WL 2578272, at *2 (the court considered rehabilation and the "unwarranted [sentencing] disparities among defendants" in determining resentencing was appropriate). As set forth below, these factors further establish the sort of "extraordinary and compelling reasons" that warrant a reduction of Hasanoff's sentence.

**C.   The Criteria for Reassessing the Length of Hasanoff's Sentence Weigh Strongly in Favor of a Sentence Reduction.**

The passage of time allows Hasanoff to provide this Court with clear and unambiguous confirmation of his remorse and contrition, backed up by concrete evidence of his full and unconditional rehabilitation, thereby demonstrating that they are genuinely and deeply felt. Significantly, Hasanoff expressed his regret and rehabilitated himself well before this motion was even contemplated--a fact that should give this Court comfort in concluding that the equities favor resentencing and that a sentence of time served is fair, just and appropriate.

In determining whether Hasanoff's sentence should be reduced, the Court must decide, among other things, whether Hasanoff presents a danger to the safety of any other person or

15

to the community, as provided in 18 U.S.C. § 3142(g). U.S.S.G. § 1B1.13(2). If he does not, the Court looks to the factors outlined in 18 U.S.C. § 3553(a). As explained below, all of these factors weigh strongly in favor of relief in Hasanoff's case.

1.   **Hasanoff Is Not a Danger.**

Hasanoff's conduct for the past decade demonstrates that the equities favor resentencing and that a sentence of "time served" is sufficient, but not greater than necessary, to afford adequate deterrence and protect the public from further crimes.

Hasanoff is fully rehabilitated and poses no danger to any person or society if released. Hasanoff committed his crimes as a young man with no criminal record. No one was physically injured as a result of hasanoff's crimes. While Hasanoff agrees that he has been convicted of a crime and sentenced to a term of imprisonment, he is not a person who has made a life of criminal activity, nor does he intend to re-enter society and begin to involve himself in such activity upon release. Nothing in Hasanoff's history indicates that he would be a danger if released or otherwise militates against the sentence reduction requested here.

Additionally, it bears noting that courts nationwide have recognized that the "positive correlation between age and recidivism" is "impossible to deny." **United States v. Nellum**, 2005 WL 300073, at *3 (N.D. Ind. Feb. 3, 2005); U.S. Sentencing Commission, The Effects of Aging on Recidivism Among Federal Offenders,   p.30   (Dec. 2017),   available   at

http://www.ussc.gov/sites/default/files/pdf/research-and-publications/
research-publications/2017/20171207_Recidivism-Age.pdf ("Among offenders
released younger than age 21, 67.6% were rearrested compared to
13.4% of those released age 65 or older. The pattern is
consistent across age groups, as age increases recidivism by any
measure declined. Sentencing Commission studies further indicate
these low recidivism rates hold constant regardless of whether
someone served their full-sentence or gained early release. Id.
at p.23. More particularly, courts have recognized that
defendants over the age of 40 (like Hasanoff, who is 44 years
old) have lower recidivism rates than younger defendants, and
that a defendant's age is ground for a lower sentence than would
otherwise be imposed. See **United States v. Marzouca**, 2008 WL
2169517, at *3-4 (E.D.N.Y. May 21, 2008)(reducing sentence from
239 months imprisonment to time served based in part on the
conclusion that "defendant is now approximately fifty years of
age").

During the time immediately prior to Hasanoff's arrest,
which landed him in this current position, Hasanoff did not have
a good sense of his place in society and was struggling with his
identity. This constant struggle was such a large part of his
life, that the price of criminal activity and any promised reward
of belonging to a cause it provided, was, in his mind, worth
taking a chance. Like many others, he was young, impressionable,
and had sought guidance in all the wrong places. Hasanoff did not
know any better, but has since learned that the price of freedom

17

is one that he will never again gamble with. Hasanoff has made a promise to himself and loved ones that he will never again place himself in any type of situation that may cause him to lose his freedom. He has learned invaluable lessons since his arrest and conviction, hard lessons and ones that he will never forget or compromise. He has dedicated himself to becoming a better person during the 10-plus-years spent incarcerated. While in prison, Hasanoff has worked hard to better himself and has participated in over 400 hours of educational and wellness courses--including business and management, personal finance, parenting, and positive mental attitude.

The fact that Hasanoff will be an asset to the community, rather than a danger, is further demonstrated by the multiple offers of employment that have already been extended to Hasanoff. Hasanoff has an extraordinary network of family and friends to support him in successfully achieving his goal of leading an exemplary life as a productive citizen. Backed by this support, and in light of his history, there is no reason to believe Hasanoff would present a danger to society.

2.   The § 3553(a) Factors Weigh Strongly in Favor of Relief.

This Court must next weigh the factors set forth in 18 U.S.C. § 3553(a) to determine whether Hasanoff's motion for a sentence reduction should be granted. Hasanoff's crimes, in which no one was physically injured, coupled with an adult record devoid of any other criminal crimes, weigh in favor of a reduced sentence. Hasanoff's role and participation in the crimes were

the actions of a misguided man who has already spent over 10 years in prison. He has maintained strong family ties and has used his time while incarcerated to complete numerous educational courses and rehabilite himself.

The 10 plus years Hasanoff has already served in prison have been transformative for him. Hasanoff has dedicated himself to his rehabilitation, personifying the objectives of § 3553(a)(2) that incarceration "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment." This factor weighs heavily in support of granting relief. The time Hasanoff has already served is more than sufficient to achieve the objectives of his sentence and incarceration, including to deter similar misconduct. Even during Hasanoff's sentencing proceedings, the Probation Officer recommended a below guideline sentence of 13-years. Hasanoff has served approximately 13-years, calculating good time credit. See **United States v. Rodriquez**, 2020 WL 1627331, at *12 (E.D. Pa. Apr. 1, 2020)(finding § 3553(a)(2)(A) satisfied for the purposes of compassionate release after defendant served the majority of his prison sentence). The "just punishment" factor is especially important under these highly unusual circumstances. When the Court sentenced Hasanoff surely "the Court did not intend for that sentence to 'include incurring a great and unforeseen risk of severe illness or death' brought on by a global pandemic." **United States v. Zukerman**, 2020 WL 1659880, at *6 (S.D.N.Y. Apr. 3, 2020)(granting Zukerman's compassionate release motion and

modifying his sentence to home incarceration after he had served 33 months of a 70-month sentence).

Finally, this Court should also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6); see also Cantu-Rivera, 2019 WL 2578272, at *2 (finding a reduced sentenced would "also avoid unwarranted disparities among defendants with similar records convicted of similar conduct"). This factor, too, weighs strongly in favor of a sentence reduction for Hasanoff. In cases like Hasanoff's, courts have concluded that a sentencing departure was warranted to comport with § 3553(a), particularly due to defendant's characteristic, and the need to avoid unwarranted sentence disparities. United States v. Benkahla, 501 F. Supp. 2d 748, 758 (E.D. Va. 2007); United States v. Muhtorov, 329 F. Supp. 3d 1289, 1301 (D. Col. 2018)("Criminal History Category of VI substantially overrepresents Muhtorov's criminal history and the likelihood he will commit other crimes, I find a Criminal History of II does not."); see also United States v. Jumaev, 2018 U.S. DIst. LEXIS 119916, 2018 WL 3490886, at *8-13.

D.   Hasanoff Is Deserving of Mercy.

Hasanoff spends a lot of time thinking about his purpose in life and what he wants to leave behind in the world. He has advised others in prison to do the same and to live a clean life once released. Through his actions and his words, Hasanoff exhibits deep remorse for the serious crimes he committed. He

20

reflects on the decisions that he previously made on a daily basis and deeply regrets his criminal conduct. Hasanoff's experiences have shaped him into the man he is today and the man that he will be if he is released. Hasanoff has kept his faith in the justice system, and he has an unwavering commitment to becoming a productive member of society if given a second chance. He has a family ready to support him and a life to build if released--a life for which he has been preparing for 10 plus years, despite a sentence that would suck the will to live out of many. Hasanoff's conduct in prison, participation in rehabilitation programs, and pronounced efforts in learning and improving himself all demonstrate that he is deserving of the relief he seeks.

The First Step Act authorizes this Court to reduce Hasanoff's sentence to a more just term of imprisonment. Thus, Hasanoff respectfully asks this Court to recognize that he deserves mercy and redemption.

HASANOFF'S EXTRAORDINARY POST OFFENSE REHABILITATION

Hasanoff's case also represents extraordinary post-offense rehabilitation. Congress has made clear that "rehabilitation of the defendant **alone** shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). The clear implication is that rehabilitation can be a factor when considered in tandem with other factors. Here, Hasanoff has demonstrated substantial and extraordinary post-offense rehabilitation.

Hasanoff has programmed extensively. (Ex. E-1 and E-2, last two programs reviews). Hasanoff has taught Accounting, Finance and Business ACE classes using his background in Accounting and Business. Additionally, according to Unit Team Staff, Hasanoff is "Polite and respectful towards staff and inmates. Interacts with staff and inmates and is not considered a management problem." (Ex. E-2).

In addition to teaching in the Education Department Hasanoff works for the chapel as both an Orderly and inmate liaison for the Muslim Faith Community. (Ex. F-1 - F-4). Hasanoff has taught classes on morals, prayer, tolerance and moderation in Islam in addition to coordinating various Islamic Community religious functions. Hasanoff has been described by Chaplain Lee as "respectful and professional", "an asset to our chapel . . . other departments", "always willing to offer assistance", "highly respected", and "humble" (Ex. F-1). The Reverand Osuji describes Hasanoff as having "respectful and amicable manner", having a "polite, approachable character" and many other positive traits

22

(Ex. F-2). Hasanoff other reference letters speak to his continued and consistent involvement in all his prison settings over the years. (Ex. F-3, F-4).

After reading an article (Ex. G-2) in the Wall Street Journal, Hasanoff proposed a "deradicalization program" at FCI-Otisville for convicted terrorists (Ex. G-1) that the BOP was exploring to establish. In 2019 Hasanoff met together with Ms. Faust and Mr. Beard (from the National BOP Program Activities Department) who are considering the proposal for FCI-Otisville. Hasanoff even offered to volunteer to help facilitate any such program.

Hasanoff currently still works in both the Education and Chapel Departments at FCI-Otisville. Hasanoff has continued his programming despite the fact he is ineligible for programming good time credits under the First Step Act due to the nature of his charges, which are excluded from earning additional good time credit. Hasanoff's rehabilitation, all while maintaining a clear prison record, are clearly extraordinary and exemplary. Indeed, Hasanoff's only disciplinary violation is minor in nature, relating primarily to violating email rules. Did not involve violence, behavioral issues, weapons, narcotics or alcohol.

## CONCLUSION

For all the foregoing reasons, Hasanoff respectfully requests that the Court find that there are extraordinary and compelling reasons warranting a reduction in Hasanoff's sentence, and to reduce his sentence to time served.

23

Dated: July 8, 2020
       Otisville, NY

                              Respectfully submitted,

                              Sabirhan Hasanoff
                              Reg. No. 75730-083
                              FCI-Otisville
                              P.O. Box 1000
                              Otisville, NY 10963

## CERTIFICATE OF SERVICE

I, Sabirhan Hasanoff, hereby certify under penalty of perjury that on this 8th day of July, 2020, I caused to be served a true and correct copy of the foregoing MOTION FOR COMPASSIONATE RELEASE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i) and EXHIBITS by U.S. Priority Mail (in a properly-addressed envelope with first-class postage duly paid) via U.S. Postal Service by depositing said envelope and contents in the institutional's internal mail system, on the following:

**Department of Justice**
United States Attorney's Office
for the Southern District of New York
1 Saint Andrew's Plaza
New York, NY 10007

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 8, 2020.

Sabirhan Hasanoff

25

# EXHIBITS

EXHIBIT A

# DEATH TRANSCRIPT

DATE FILED — THE CITY OF NEW YORK – DEPARTMENT OF HEALTH AND MENTAL HYGIENE

## CERTIFICATE OF DEATH

Certificate No. 156-20-024877

NEW YORK CITY
DEPARTMENT OF HEALTH
AND MENTAL HYGIENE
Apr 13, 2020 12:09 AM

**1. DECEDENT'S LEGAL NAME** ABITKHAN HASANOFF
(First, Middle, Last, Suffix)

**MEDICAL CERTIFICATE OF DEATH** (To be filled in by the Physician)

| 2a. New York City | 2c. Type of Place | 4 ☐ Nursing Home/Long Term Care Facility | 2d. Any Hospice care in last 30 days | 2e. Name of hospital or other facility (if not facility, street address) |
|---|---|---|---|---|
| 2b. Borough | 1 ☐ Hospital Inpatient 2 ☐ Emergency Dept/Outpatient 3 ☐ Dead on Arrival | 5 ☐ Hospice Facility 6 ☐ Decedent's Residence 7 ☐ Other Specify | 1 ☐ Yes 2 ☐ No 3 ☐ Unknown | Kings County Hospital |
| Brooklyn | | | | |

| Date and Time of Death | 3a. (Month) April | (Day) 12 | (Year-yyyy) 2020 | 3b. Time 8:31 ☐ AM ☐ PM | 4. Sex Male | 5. Date last attended by a Physician mm 04 dd 12 yyyy 2020 |
|---|---|---|---|---|---|---|

6. Certifier: I certify that death occurred at the time, date and place indicated and that to the best of my knowledge traumatic injury or poisoning DID NOT play any part in causing death, and that death did not occur in any unusual manner and was due entirely to NATURAL CAUSES. See instructions on reverse of certificate.

☐ D.O. ☐ M.D. ☐ NP ☐ PA

Name of Medical Certifier ERIC TANG
(Type or Print)

Signature *Eric Tang*
Signature Electronically Authenticated

Address 451 Clarkson Ave Brooklyn, NY 11203

License No. 502346

Date APR-12-2020

**PERSONAL PARTICULARS** (To be filled in by Funeral Director, or, in case of City Burial, by the Physician)

| 7a. Usual Residence State New York | 7b. County Kings | 7c. City or Town Brooklyn | 7d. Street and Number 60 Oceana Dr W | Apt. No. | ZIP Code: 11235 | 7e. Inside City Limits? 1 ☐ Yes 2 ☐ No |
|---|---|---|---|---|---|---|

| 8. Date of Birth | (Month) September | (Day) 12 | (Year-yyyy) 1946 | 9. Age at last birthday (years) 73 | If Under 1 Year Months / Days | If Under 1 Day Hours / Minutes **** **** | 10. Social Security No. - 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 |
|---|---|---|---|---|---|---|---|

| 11a. Usual Occupation (Type of work done during most of working life...) Do not use "retired" Self Employed | 11b. Kind of business/industry Self Employed | 12 - Aliases or AKA's |
|---|---|---|

| 13. Birthplace (City & State or Foreign Country) Uzbekistan | 14. Education (Check the box that best describes the highest degree or level of school completed at the time of death) 1 ☐ 8th grade or less; none 2 ☐ 9th-12th grade; no diploma 3 ☐ High school graduate or GED 4 ☐ Some college credit, but no degree 5 ☐ Associate degree (e.g. AA, AS) 6 ☐ Bachelor's degree (e.g. BA, AB, BS) 7 ☐ Master's degree (e.g. MA, MS, MEng, MEd, MSW, MBA) 8 ☐ Doctorate (e.g. PhD, EdD) or Professional degree (e.g. MD, DDS, DVM, LLB, JD) |
|---|---|

| 15. Ever in U.S. Armed Forces? 1 ☐ Yes 2 ☐ No | 16. Marital/Partnership Status at time of death 1 ☐ Married 2 ☐ Domestic Partnership 3 ☐ Divorced 4 ☐ Married, but separated 5 ☐ Never Married 6 ☐ Widowed 7 ☐ Other, Specify 9 ☐ Unknown | 17. Surviving Spouse's/Partner's Name (prior to first marriage) (First, Middle, Last) Saiyara Hasanoff |
|---|---|---|

| 18. Father/Parent Name (Prior to first marriage) (First, Middle, Last) Adikhan No Last Name Given | 19. Mother/Parent Name (Prior to first marriage) (First, Middle, Last) Abdullah No Last Name Given |
|---|---|

| 20a. Informant's Name Gulsara Akyol | 20b. Relationship to Decedent Daughter | 20c. Address (Street and Number) 100 Oceana Dr W Apt 3H | City & State Brooklyn, NY | ZIP Code 11235 |
|---|---|---|---|---|

| 21a. Method of Disposition 1 ☐ Burial 2 ☐ Cremation 3 ☐ Entombment 4 ☐ City Cemetery 5 ☐ Other Specify | 21b. Place of Disposition (Name of cemetery, crematory, other place) Laurel Grove Cemetery |
|---|---|

| 21c. Location of Disposition (City & State or Foreign Country) Totowa, New Jersey | 21d. Date of Disposition mm 04 dd 18 yyyy 2020 |
|---|---|

| 22a. Funeral Establishment Muslim Funeral Services of New York, Inc. | 22b. Address (Street and Number) 5121 2nd Avenue | City & State Brooklyn, NY | ZIP Code 11232 |
|---|---|---|---|

Changes approved for filing by the Commissioner of Health. Formerly: Disposition Method - City Burial (Potter's Field); approved by Deputy City Registrar J. Hicks on Apr-18-2020; No further entry beyond this point.

EVT202004196677

*Gretchen Van Wye*
Gretchen Van Wye, Ph.D., City Registrar as of 9/1/18

April 18, 2020

*Steven P. Schwartz*
Steven P. Schwartz, Ph.D., City Registrar

VR 15 (Rev. 01/20)

This is to certify that the foregoing is a true copy of a record on file in the Department of Health and Mental Hygiene. The Department of Health and Mental Hygiene does not certify to the truth of the statements made thereon, as no inquiry as to the facts has been provided by law.

Do not accept this transcript unless it bears the security features listed on the back. Reproduction or alteration of this transcript is prohibited by §3.19(b) of the New York City Health Code if the purpose is the evasion or violation of any provision of the Health Code or any other law.





The City of New York

EXHIBIT B

**Affadavit for Sabirhan Hasanoff Reg #75730083**

June 25, 2020

To Whom It May Concern;

My name is Saiyara Hasanoff.  My son is Sabirhan Hasanoff, Reg # 75730083.

I am writing this affidavit to please ask that you consider him for compassionate release.  A lot has changed in the last few weeks for our family and we really need him home.

My dear husband, Abitkhan Hasanoff died on April 12, 2020 from COVID-19.  We live in Brooklyn, New York and we were both infected sometime at the end of March.  We were sick at home, but my husband's condition got worse.  He was taken by ambulance to Coney Island Hospital, where he was on a ventilator for almost a week and died once they transferred him to the ICU at Kings County Hospital.

I am now alone.  My husband worked to help support us and Sabirhan's wife and children.  He also helped me at home. My husband took care of all our grocery shopping, helping me with doctor visits, house-work and so much more.   I have osteo-arthritis in both my knees (having one knee replacement in 2014) as well as spinal arthrosis.  I have a lot of pain in both my knees and back from this and need a walker.  While I recovered from COVID, I still feel the physical effects from lung damage by the virus.

My younger son lives in Australia and my daughter has 3 small children and plans to move, and is unable to help.

If Sabirhan were released, I could live with him and his family and he would be my caregiver.  I respectfully ask that you consider him for compassionate release.  I am now alone and desperately need my son to be by my side.  With my age and medical conditions, I don't know how much longer I am here to see him, and to have him be my care-taker would mean so much. My doctor also says I have early stage Alzheimers.  For him to be beside me and care for me while I am still sound of mind would be the greatest gift.

I know he deeply regrets his past and the mistakes he has made.  But he's come a long way over the decade plus he's served.  I have seen first-hand the effects of COVID and am worried sick about him catching it in prison.

I beg you to consider him for early home release to be by my side.

Thank you

Saiyara Hasanoff

S.HASANOFF,

**EXHIBIT C**

Wahida Hasanoff
19 Boxwood Lane
Farmingdale, NY 11735

6/24/2020

Re: Compassionate release application, Sabirhan Hasanoff/ 75730-083

To whom it may concern,

Please accept this letter as an affidavit for the compassionate release application of my
husband, Sabirhan Hasanoff (Sabir). Sabir and I have been married since 2001 and have 3
children together between the ages of 10-16. Since his incarceration in 2010 I have supported
our family by working in retail at Bloomingdales, some public assistance and financial support
from my father-in-law, Abithan Hasanoff.

Beginning with the Corona Virus shutdowns of schools and businesses in early 2020 and
culminating in the death of my father-in-law on 4/12/20 from COVID 19 our family circumstances
have dramatically changed for the worse:

A. I have lost my employment in retail at Bloomingdales which closed on March 15th and finding
another part time job has been impractical given my children's' schools have also closed in
March due to the pandemic.  This has forced me to stay home to care for them and help them in
home schooling.

B. My father in law, since Sabir's incarceration, has been my primary financial support.  Since
his death, and resulting lack of financial support, paying for my routine bills has become a
struggle.  I have resorted to taking personal loans from friends and family to cutting back on
expenses, where I can, just to make ends meet.

Allowing Sabir compassionate release will alleviate the difficult circumstances I am currently
facing.  His presence will permit me to go back to work, provide a caregiver to our children as
well as Sabir's elderly mother who is also left without a caregiver since the death of my father in
law.  I do not have any other person who can fill these roles besides my husband.

I pray for your approval of his compassionate release application - it will really mean a lot to me
and my family.

Thank you.

Sincerely,

Wahida Hasanoff

EXHIBIT D

# Bureau of Prisons
## Health Services
### Medical Duty Status

| Reg #:  75730-083 | Inmate Name:   HASANOFF, SABIRHAN |
|---|---|

## Housing Status
__ confined to the living quarters except   __ meals   __ pill line   __ treatments   Exp. Date: _____

__ on complete bed rest:   __ bathroom privileges only   Exp. Date: _____

X cell:   __ cell on first floor   __ single cell   X lower bunk   __ airborne infection isolation   Exp. Date:  04/30/2021

__ other: _____   Exp. Date: _____

## Physical Limitation/Restriction
__ all sports   Exp. Date: _____

X weightlifting:   __ upper body   X lower body   Exp. Date:  04/30/2021

X cardiovascular exercise:   X running   __ jogging   __ walking   X softball   Exp. Date:  04/30/2021
          X football   X basketball   X handball   __ stationary equipment

__ other: _____   Exp. Date: _____

## May have the following equipment in his / her possession:

| Equipment | Start Date | End Date | Return Date |
|---|---|---|---|
| Brace - back | 02/06/2017 | | |
| HENEATED DISC AND PINCHED NERVE | | | |
| Eye Glasses | 08/15/2016 | | |

## Work Restriction / Limitation:
Cleared for Food Service:   Yes

X No Restrictions

Comments:   T7 - Reviewed 4/20

| VanderHey-Wright, Jayne PA-C | 04/29/2020 |
|---|---|
| Health Services Staff | Date |

Inmate Name: ___ HASANOFF, SABIRHAN ___   Reg #: __ 75730-083 __   Quarters: __ G03  302

*ALL EXPIRATION DATES ARE AT 24:00*

EXHIBIT E-1



## Individualized Reentry Plan - Program Review (Inmate Copy)
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HASANOFF, SABIRHAN  75730-083

SEQUENCE: 01611654
Team Date: 01-02-2020

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 05-13-2010 |

**Current Drug Assignments**

| Assignment | Description | Start |
|---|---|---|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 03-16-2017 |
| ED NONE | DRUG EDUCATION NONE | 11-13-2013 |

**FRP Details**

Most Recent Payment Plan

| FRP Assignment: | COMPLT | FINANC RESP-COMPLETED | | Start: 12-12-2017 |
|---|---|---|---|---|
| Inmate Decision: | AGREED | $25.00 | Frequency: | QUARTERLY |
| Payments past 6 months: | $0.00 | | Obligation Balance: | $0.00 |

**Financial Obligations**

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $200.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

**Payment Details**

| Trust Fund Deposits - Past 6 months:  $400.00 | Payments commensurate ?   N/A |
|---|---|
| New Payment Plan: | ** No data ** |

## Progress since last review

CSW/TM: Inmate provided the following Certificates of Completion/Achievement: Facilitating Money and Banking ACE class in 02/2019 & 07/2019, Advanced Training Fitness Class in 07/2019, Facilitating Patience and Gratitude in 09/2019, and Parenting Class: Systematic Training for Effective Parenting in 10/2019.

Certificates in file to date: While at FCI Allenwood: Aquaculture Science in 06/2014, Parenting Inside/Out Dad in 09/2016, Money Smart in 10/2016, Breaking Barriers in 11/2016, and Facilitated Self Publishing & Planet Earth in 11/2016. At FCI Otisville: Islamic - Three Fundamental Principles Part IV in 03/2017, Introduction to Horticulture in 04/2017, Victim Impact Workshop in 05/2017, Teen Parenting in 06/2017, Beginners Anatomy in 09/2017, Walk/Run Fitness in 11/2017, Kinesiology Class in 11/2017, Health & Fitness Class in 12/2017, Program Development in 02/2018, Instructed - Accounting Principles class in 04/2018, Nutrition & Fitness and Fitness for All in 04/2018, A Guide to Sound Creed in 05/2018, ISSA Personal Trainer in 05/2018, Cooperative Parenting & Divorce in 05/2018, Instructed - Prayers in Arabic for Beginners in 06/2018, Impact Class in 07/2018, Accounting Principles ACE class in 09/2018, Redemption and Rectification in 10/2018, Textile/Embroidery and Upholstery in 11/2018, Doing Time in the Right Mind in 12/2018, and Banking in 02/2019, Facilitating Spirituality and Purifying the Soul in 02/2019, Skin Cancer Awareness in 04/2019 and Positive Mental Attitude - Effective Alternatives in 04/2019.

## Next Program Review Goals

CSW/TM: Recommend participating in Commitment to Change. He has participated in numerous programs and has facilitated some also. Continue programing at your own leisure.

## Long Term Goals

Spent some of his money. Again begin saving $5/month for release needs. Recommend utilizing Pre-Release account. Account balance: $68.34
Pre-Release balance: $0.00

## RRC/HC Placement

## Comments

Treaty Transfer: Eligible and interested.
Finance/Poverty Need Screen
Is there documentation in the PSR of any of the following?

| | | |
|---|---|---|
| _—_ | Any history of Bankruptcy |
| _—_ | No bank account |
| _—_ | No assets nor liabilities noted in PSR |
| _X_ | Debts noted in Credit Report or other sources |
| _—_ | Tax Liabilities/back taxes |
| _—_ | Unpaid alimony/child support |
| _—_ | other indications of lack of financial management skills (specify) |

YES ___X___     NO _____ (if any of the above, check yes)
If the answer is yes, the inmate has a financial/poverty skills need.



**Individualized Reentry Plan - Program Review  (Inmate Copy)**
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HASANOFF, SABIRHAN  75730-083

SEQUENCE: 01611654
Team Date: 01-02-2020

| | | | |
|---|---|---|---|
| Facility: | OTV  OTISVILLE FCI | Proj. Rel. Date: | 01-26-2026 |
| Name: | HASANOFF, SABIRHAN | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 75730-083 | DNA Status: | NYM00817 / 06-02-2011 |
| Age: | 43 | | |
| Date of Birth: | 03-05-1976 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|
| NO DETAINER | |

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| OTV | EDUC EVE | EDUCATION EVENINGS | 07-16-2019 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| OTV | ESL HAS | ENGLISH PROFICIENT | 11-12-2013 |
| OTV | GED HAS | COMPLETED GED OR HS DIPLOMA | 01-17-2014 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| OTV GP | C | NUTRITION SEMINAR ON FAST FOOD | 08-23-2019 | 08-23-2019 |
| OTV GP | C | SUN SMART SKIN CANCER | 04-15-2019 | 04-15-2019 |
| OTV GP | C | MONEY AND BANKING | 10-22-2018 | 02-05-2019 |
| OTV GP | C | TEXTILES & PRODUCTION VT CLASS | 08-17-2018 | 11-09-2018 |
| OTV GP | C | ISSA COURSE | 04-26-2018 | 05-21-2018 |
| OTV GP | C | PARENTING AND DIVORCE CLASS | 02-28-2018 | 05-02-2018 |
| OTV GP | C | ISSA NUTRITION | 02-19-2018 | 03-19-2018 |
| OTV GP | C | ISSA PROGRAM DEVELOPMENT | 02-13-2018 | 02-13-2018 |
| OTV GP | C | INTRO TO PHYSICAL FITNESS | 11-06-2017 | 01-06-2018 |
| OTV GP | C | WALKING NUTRITION | 09-04-2017 | 11-05-2017 |
| OTV GP | C | BASIC KINESIOLOGY | 10-09-2017 | 11-04-2017 |
| OTV GP | C | BASIC ANATOMY | 09-11-2017 | 09-30-2017 |
| OTV GP | C | HEALTH FAIR | 09-25-2017 | 09-25-2017 |
| OTV GP | W | ASTRONOMY ACE CLASS | 03-06-2017 | 04-02-2017 |
| OTV GP | C | HORTICULTURE AM | 02-27-2017 | 04-20-2017 |
| ALM | C | RP6-REENTRY COGNITIVE SKILLS | 10-12-2016 | 12-27-2016 |
| ALM | C | RP6-FAMILY REUNIFICATION EVENT | 12-09-2016 | 12-09-2016 |
| ALM | C | HOW TO PUBLISH YOUR OWN BOOK | 09-30-2016 | 11-17-2016 |
| ALM | C | PLANET EARTH | 09-29-2016 | 11-15-2016 |
| ALM | C | RP6-BREAKING BARRIERS CLASS | 08-01-2016 | 11-01-2016 |
| ALM | C | RP3-FDIC MONEY SMART - PART1 | 08-18-2016 | 10-20-2016 |
| ALM | C | RP6-FAMILY REUNIFICATION EVENT | 09-16-2016 | 09-16-2016 |
| ALM | C | RP6-INSIDE OUT DAD PARENT PROG | 08-02-2016 | 09-28-2016 |
| ALM | C | AQUACULTURE SCIENCE VT AM | 12-10-2013 | 06-12-2014 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| ** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ** | |

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 05-13-2010 |
| CARE1-MH | CARE1-MENTAL HEALTH | 12-04-2013 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| NO F/S | NO FOOD SERVICE WORK | 02-13-2017 |
| NO PAPER | NO PAPER MEDICAL RECORD | 05-13-2010 |

EXHIBIT E-2



**Individualized Reentry Plan - Program Review  (Inmate Copy)**

SEQUENCE: 01611654

Dept. of Justice / Federal Bureau of Prisons

Team Date: 07-11-2019

Plan is for inmate: HASANOFF, SABIRHAN 75730-083

| Assignment | Description | Start |
|---|---|---|
| NO PAPER | NO PAPER MEDICAL RECORD | 05-13-2010 |
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 05-13-2010 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP UNQUAL | RESIDENT DRUG TRMT UNQUALIFIED | 03-16-2017 |
| ED NONE | DRUG EDUCATION NONE | 11-13-2013 |

## FRP Details

Most Recent Payment Plan

FRP Assignment:     **COMPLT**     **FINANC RESP-COMPLETED**          Start: 12-12-2017

Inmate Decision:     **AGREED**          $25.00                    Frequency: **QUARTERLY**

Payments past 6 months:          $0.00               Obligation Balance: $0.00

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $200.00 | $0.00 | IMMEDIATE | COMPLETEDZ |

** NO ADJUSTMENTS MADE IN LAST 6 MONTHS **

### Payment Details

Trust Fund Deposits - Past 6 months:   $500.00               Payments commensurate ?   N/A

New Payment Plan:              ** No data **

## Progress since last review

Inmate provided the following Certificates of Completion/Achievement: Money and Banking in 02/2019, Facilitating Spirituality and Purifying the Soul in 02/2019, Skin Cancer Awareness in 04/2019 and Positive Mental Attitude - Effective Alternatives in 04/2019. CTC did not run in the last 6 months.

PSYCH/ED: Positive Mental Attitude (PMA) Effective Alternatives Program is phase 2 of the Doing Time With The Right Mind Program. It teaches how to have a positive attitude and analyzing and changing criminal and/or negative thinking errors in order to have a better life with more positive behavior. This class meets for six weeks. He began the program on 2/27/2019 and completed it on 4/24/2019 with good participation.

RGL/AR: Inmate Hasanoff facilitated a class on "Spirituality and purifying the soul." He is very active in the Islamic community. He facilitated a class titled "Redemption and Rectification", which is lessons and morals for the incarcerated. He facilitated a class called "Sound Creed", which is a study on Islamic beliefs.

## Next Program Review Goals

CSW/TM: Recommend participating in Commitment to Change. He has participated in numerous programs and has facilitated some also. Continue programing at your own leisure.

## Long Term Goals

Sent some of his money. Again begin saving $5/month for release needs. Recommend utilizing Pre-Release account.
Account balance: $183.92
Pre-Release balance: $0.00

## RRC/HC Placement

## Comments

Treaty Transfer: Eligible and interested.

Unit Team

Polite and respectful towards staff and inmates. Interacts with staff and inmates. Not considered a Management problem

Education

Progress past 6 mos: Good short term goals: Complete 1 Adult Continuing course for Pre- Employment/ work prep W/in 6 mos. Enroll in Post-Secondary course w/in 6 mos. Complete Computer VT & 1 other VT course.



## Individualized Reentry Plan - Program Review  (Inmate Copy)
Dept. of Justice / Federal Bureau of Prisons
Plan is for inmate: HASANOFF, SABIRHAN  75730-083

SEQUENCE: 01611654
Team Date: 07-11-2019

| | | | |
|---|---|---|---|
| Facility: | OTV OTISVILLE FCI | Proj. Rel. Date: | 01-26-2026 |
| Name: | HASANOFF, SABIRHAN | Proj. Rel. Mthd: | GCT REL |
| Register No.: | **75730-083** | DNA Status: | NYM00817 / 06-02-2011 |
| Age: | 43 | | |
| Date of Birth: | 03-05-1976 | | |

### Detainers

| Detaining Agency | Remarks |
|---|---|
| *NO DETAINER* | |

### Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| OTV | EDUC PM | EDUCATION PM | 05-16-2018 |

### Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| OTV | ESL HAS | ENGLISH PROFICIENT | 11-12-2013 |
| OTV | GED HAS | COMPLETED GED OR HS DIPLOMA | 01-17-2014 |

### Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| OTV GP | C | SUN SMART SKIN CANCER | 04-15-2019 | 04-15-2019 |
| OTV GP | C | MONEY AND BANKING | 10-22-2018 | 02-05-2019 |
| OTV GP | C | TEXTILES & PRODUCTION VT CLASS | 08-17-2018 | 11-09-2018 |
| OTV GP | C | ISSA COURSE | 04-26-2018 | 05-21-2018 |
| OTV GP | C | PARENTING AND DIVORCE CLASS | 02-28-2018 | 05-02-2018 |
| OTV GP | C | ISSA NUTRITION | 02-19-2018 | 03-19-2018 |
| OTV GP | C | ISSA PROGRAM DEVELOPMENT | 02-13-2018 | 02-13-2018 |
| OTV GP | C | INTRO TO PHYSICAL FITNESS | 11-06-2017 | 01-06-2018 |
| OTV GP | C | WALKING NUTRITION | 09-04-2017 | 11-05-2017 |
| OTV GP | C | BASIC KINESIOLOGY | 10-09-2017 | 11-04-2017 |
| OTV GP | C | BASIC ANATOMY | 09-11-2017 | 09-30-2017 |
| OTV GP | C | HEALTH FAIR | 09-25-2017 | 09-25-2017 |
| OTV GP | W | ASTRONOMY ACE CLASS | 03-06-2017 | 04-02-2017 |
| OTV GP | C | HORTICULTURE AM | 02-27-2017 | 04-20-2017 |
| ALM | C | RP6-REENTRY COGNITIVE SKILLS | 10-12-2016 | 12-27-2016 |
| ALM | C | RP6-FAMILY REUNIFICATION EVENT | 12-09-2016 | 12-09-2016 |
| ALM | C | HOW TO PUBLISH YOUR OWN BOOK | 09-30-2016 | 11-17-2016 |
| ALM | C | PLANET EARTH | 09-29-2016 | 11-15-2016 |
| ALM | C | RP6-BREAKING BARRIERS CLASS | 08-01-2016 | 11-01-2016 |
| ALM | C | RP3-FDIC MONEY SMART - PART1 | 08-18-2016 | 10-20-2016 |
| ALM | C | RP6-FAMILY REUNIFICATION EVENT | 09-16-2016 | 09-16-2016 |
| ALM | C | RP6-INSIDE OUT DAD PARENT PROG | 08-02-2016 | 09-28-2016 |
| ALM | C | AQUACULTURE SCIENCE VT AM | 12-10-2013 | 06-12-2014 |

### Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|
| *** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***| |

### Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1 | HEALTHY OR SIMPLE CHRONIC CARE | 05-13-2010 |
| CARE1-MH | CARE1-MENTAL HEALTH | 12-04-2013 |

### Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| ATH RESTR | NO SPORTS/NO WEIGHT LIFTING | 02-06-2017 |
| LOWER BUNK | LOWER BUNK REQUIRED | 01-11-2018 |
| NO F/S | NO FOOD SERVICE WORK | 02-13-2017 |

EXHIBIT F-1



U.S. Department of Justice

Federal Bureau of Prisons

---

Chaplaincy Services

Federal Correctional Institution
Otisville, New York 10963

January 13, 2019

To Whom It May Concern:

This letter is in recognition of inmate Hasanoff's role as facilitator and inmate Imam of Muslim community programs at the FCI Otisville NY.

Mr. Hasanoff arrived at Otisville in January 2017 and during this time has facilitated many programs in the Chaplaincy department including:
- Organizing and leading Muslim prayer services
- Facilitating faith based programs including the following:
  o Redemption and Rectification – lessons and morals for the incarcerated
  o Beginners prayer classes
  o Guide to sound creed – tolerance and moderation in Islam

Mr. Hasanoff has also served as liaison with Chaplain staff in arranging Ramadhan fasts, Islamic holidays and religious celebrations.  He has always conducted himself in a respectful and professional manner while maintaining a positive outlook as a mentor to other inmates.

In addition to these contributions, Mr. Hasanoff works in the education department where he teaches Introductory Accounting and Money and Banking classes.  We appreciate Mr. Hasanoff's continued efforts in helping others, and himself, in rehabilitation programming at the FCI Otisville NY.

Mr. Hasanoff is not only a true asset to our Chapel, but he is an asset to other departments.  He is always willing to offer his assistance and has an excellent rapport with all the inmates who come to Chapel whether he is a Muslim or not.  He is highly respected by all men regardless of their religious background and their faith traditions. He is humble and his daily walk and service to others have been consistently exemplary to many.

I wholeheartedly recommend him and if you have any questions regarding his character, personality, or all the work he performed here, please contact me at 845-386-6738.

Sincerely,

Chaplain Lee

`

EXHIBIT F-2



**U.S. Department of Justice**

Federal Bureau of Prisons

*Federal Correctional Institution*

Chaplaincy Services

*Otisville, New York 10963*

August 16, 2019

MEMORANDUM FOR TREATY TRANSFER

FROM:    Rev. Fr. Ngozi Osuji, Staff Chaplain

SUBJECT:    Hasanoff, Sabirhan, 75730-083

The above stated inmate is the Muslim Faith Liaison at the Federal Correctional Institution (FCI), Otisville, New York.

I/m Hasanoff interacts and coordinates with every department at the OTV facility in a professional, respectful, and amicable manner. Here at our Religious Services Department, he organizes various religious activities in the chapel area for the Islamic inmate population which is exclusively reserved for the Imam at any Mosques during Jumah. His politeness, approachable character, and deep knowledge in various fields, including the Islamic religion, have helped in no small measure to make him retain the leadership position for more than two years. This is not a common experience in a prison setting with big numbers of faith groups. In my position, I know i/m Hasanoff as a man of deep faith which translates to love for his family and peace for entire human race.

I hereby attest to his hard work, affable, and good team spirit in taking viable initiatives. He does not wait to be asked to do any work assigned to him, but does it admirably anyway. I commend his constant clean and neat outlook. His involvement in faith-based, re-entry, and academic programs help him focus on being a better person in and eventually out of prison. While on the streets, he was an Accountant, a skill he teaches freely to other inmates at the Education Department during classes. The positive impact this singular contribution brings to FCI cannot be overstated.

Therefore, I have no reservations recommending him to you for favorable consideration of a treaty transfer with a view to giving him a second chance. God's choices blessings.

EXHIBIT F-3



**U.S. Department of Justice**
**Memorandum**
Federal Bureau of Prisons

*Federal Correctional Complex, Allenwood*

*Federal Correctional Institution-Allenwood*
*P.O. Box 2500*
*White Deer, PA 17887*

December 8, 2016

To Whom It May Concern:

Inmate Sabirhan Hasanoff, #75730-083 is assigned to the Federal Correctional Institute Allenwood, Education Department as VT Worker from 5-20-16 to present.

The work assignment listed above includes the following duties at the FCI Allenwood, Education Department:

- Assisting the Aquaculture VT program with the maintenance, upkeep of its operations.

Along with this work assignment, Inmate Hasanoff has also instructed numerous evening Adult Continuing Education Courses.

He successfully completed a 240 hour Aquaculture VT program with exceptional scores.

This letter is intended to provide certification of the inmate's work assignment and educational programming from the dates listed above; therefore, it does not make any implications of his work attendance, work performance, or personal character.

Thank you,

Molly Bittenbender
Assistant Supervisor of Education

EXHIBIT F-4



# UNITED STATES GOVERNMENT
## MEMORANDUM

Metropolitan Correctional Center, New York, New York

Date: November 16th 2012

MEMORANDUM FOR: TO WHOM IT MAY CONCERN

FROM: Rev. Steve Mun, Chaplain

SUBJECT: Mr. Hasanoff Sabirhan
Register Number: 75730-083/ Housing Unit – 7 S

This memo is being written to acknowledge the outstanding contribution that Mr. Hasanoff has made as an active member of Muslim Faith Community at the MCC New York.

Mr. Hasanoff arrived at the MCC New York in May 2010 and immediately established himself as a faithful member of the Muslim community. Mr. Hasanoff has been attending at weekly Jumah services and assisting for Jumah services in the capacity of helper for Mulsim community, and is doing a wonderful job in that role.

Mr. Hasanoff is in line for a Certificate of Appreciation for his outstanding service to the Muslim Faith Community.

The Religious Services Department sees Mr. Hasanoff a positive model for other Muslim inmates, and prays that he continues to strive for excellence in faith.

Rev. Steve Mun, Chaplain

EXHIBIT G-1

Counselor Melendez,


In the attached Wall Street Journal article from 2/7/18 regarding religious extremism in U.S. Federal Prisons, it mentions "The Bureau (FBoP) is assessing programs geared towards violent extremism that have been adopted in various jurisdictions." These programs, which exist in Europe & the Middle East, are otherwise referred to as deradicalization programs and have had high success rates in reducing recidivism amongst inmates convicted of Terrorism related offenses.

I am proposing that OTV FCI establish a deradicalization program for U.S. BoP inmates convicted of Terrorism related offenses. As mentioned in the attached article, this program could incorporate elements from the overseas deradicalization programs combined with religious instruction by vetted and cleared outside Islamic clerics. As an inmate with a Terrorism offense I would be prepared to help facilitate such a program. OTV would be an ideal institution for such a program due to the following:
1.) The existing PODS program for ex-gang members has many similarities to those convicted of Terrorism. i.e. many ignorant & disenfranchised muslims fall victim to propaganda of online extremist groups.
2.) OTV has a robust religious services department through which outside Imams (muslim clergy) could be brought into teach the true Islam of peace & non-violence. This would be essential, as misunderstanding of Islam is the root cause of Terror related offenses.
3.) Similar to the Victim Impact program, OTV deradicalization program could include elements that allows ex-terrorists to see the impact of their crimes had on their victims.
4.) The OTV Psychology Dept. could facilitate a mentor/mentee aspect as with the PTSD program offered in Danbury.
5.) The majority of federal inmates with Terrorism charges are housed in FCI's making OTV a suitable institution for such a program - further, bed space is plentiful.
6.) The current muslim population of OTV FCI is less than 40 inmates of which three are held on Terrorism related charges. This makes security and monitoring easier compared to larger compounds. This further reduces the risk of the spread of radicalization.

The vast majority of inmates serving time for Terrorism charges will be going home (i.e. are not serving life sentences). Currently, there is no programs offered to address the issue of radicalization (i.e. some of these inmates may still pose a potential danger to society). The Bureau has recognized the need for a program addressing extremism and establishing one at OTV would meet this challenge.

As a first step, it may be worthwhile to contact the person in the BoP quoted above. I can help prepare a more detailed proposal if the administration chooses to pursue such an endeavor.



Hasanoff, Sabir (reg: 75730-083)

EXHIBIT G-2

Case 1:16-cr-00162-KMW Document 257 Filed 07/17/20 Page 99 of 108

# Prisons Said to Help Extremism Fester

### Study warns lack of steps to deradicalize terror convicts helps fuel networks spread

By Jessica Donati

Heather Coffman was among the first U.S. prisoners to return to her hometown in Virginia after serving time on charges linked to support of Islamic State.

"I'm home," she wrote on her Facebook page in December. Next, she posted a series of images and messages, some labeled as Islamic State material, imploring "all Muslim women" to cover up with the most conservative style of clothing.

After more than four years in prison, Ms. Coffman's text views had apparently not moderated.

"On Monday, a new study by the Program on Extremism at George Washington University warned that the absence of programs to deradicalize people convicted on terrorism charges inside the spread of extremist ideas to other inmates in America's prisons, and beyond.

"The U.S. lags behind many

Western nations and must make such programs a priority," said the report, which seeks to examine the causes of some 40 U.S. support of Islamic State.

"Ignoring the risk of radicalization in U.S. prisons could allow the virus to spread," cofounding director Alexander Meleagrou-Hitchens, one of the authors of the report.

"We have seen in Europe how dangerous these networks can be to allow prison populations to move into their communities," he said.

At least two members of the cell responsible for the Nov. 2015 Paris attacks, which left more than 100 dead, met in prison, the report said.

The threat of extremism in the U.S. is still small compared with countries in Europe like France, which has seen more than 1,000 people travel to Syria and Iraq to join Islamic State, according to the Soufan Center, a group that tracks extremism.

About 140 people are in U.S. prisons on charges related to supporting Islamic State.

Many, like Ms. Coffman, never attempted to travel or expressed interest in violent attack, although they may have promoted Islamic State online or lied to federal agents investigating it. Others were linked to terrorism, have access to programs to encourage reintegration into society.

The Federal Bureau of Prisons said it has monitored this

population for a connection to terrorism and works closely with the Federal Bureau of Investigation and other agencies to prevent networks from spreading. It also said prison officials are linked to terrorism or other forms of support.

About 140 people are in U.S. programs geared toward violent extremism that have been adopted in various jurisdictions," it said in a statement.

Ms. Coffman, the Virginia woman who is now 32 years old, had never lived anywhere but her parents' home just outside Richmond, aside from a short stint in the U.S. Army

her defense lawyers said in court records. Holding down a full-time job and raising a son, Ms. Coffman had little time to devote to her beliefs until she became absorbed in online activity.

She met an online persona who appeared to emerge in early 2014, "after encountering a man online who claimed to be a jihadist in Macedonia, and came radicalized through her relationship with him, and came radicalized through her relationship with him.

"Her activities online and her federal interest, and she was charged with lying to federal agents about supporting Islamic State. She was sentenced in May 2015 to 33 months in prison, followed by three years of supervised release.

Ms. Coffman and her lawyers declined requests for an interview. Her Facebook posts suggest that her ultraconservative views, critical of the role of women in society and others in prison, haven't changed.

"Sisters, please, obey proper hijab, so the woman who do wear proper hijab not get compared to you then called extreme," she wrote in one recent post.



SAUL LOEB/AGENCE FRANCE-PRESSE/GETTY IMAGES

EXHIBIT H

Gulsara Akyol
100 Oceana Dr West Apt 3H
Brooklyn, NY 11235

April 26, 2020

Dear Warden,

I am writing to respectfully ask you to consider my brother, Sabirhan Hasanoff Reg# 75730083 for compassionate release.

Our father, Abitkhan Hasanoff, died on April 12, 2020 from Covid-19. He was sick at home for a week, and was in the hospital for another week on a ventilator. Prior to the shut-down order, my father was working full time in his Brooklyn newsstand. He worked at his newsstand 7 days a week for the past 31 years and used it to support his own kids; and after Sabirhan's incarceration, his grandchildren.

Despite being 73 and having had major heart surgery in 2015; he continued to work to provide financially for Sabirhan's wife and 3 children, ages 16, 13 and 10. His biggest concern before his illness and death was how to provide for his grandchildren.

Sabirhan has served almost 70% of his sentence, having spent over a decade of his sentence. I understand the seriousness of his crime, but I know he deeply feels remorse and regret and has always accepted full responsibility. His conduct has been exemplary and he has been a model inmate. He is the inmate liaison with senior staff for the Muslim community in Otisville, and has taught classes in the education department. He has also been working closely with Rabbi Richter on creating a "de-radicalization" program for other inmates.

If he were to be released, he would reside with his wife and children, and our Mother, who currently has early onset Alzheimers, and requires care. He would be able to run my father's newsstand to financially support himself and his family.

I hope you will consider our request.

Please stay healthy and safe.


Regards,


Gulsara Akyol
(917) 498 3081

A-2



```
============================================
                 BAY
            2628 E 18TH ST
         BROOKLYN, NY 11235-9997
              350991-0303
             (800)275-8777
          04/28/2020 01:35 PM
============================================
--------------------------------------------
Product              Qty   Unit      Price
                           Price
First-Class Mail®     1    $0.55     $0.55
Letter
    (Domestic)
    (OTISVILLE, NY 10963)
    (Weight:0 Lb 0.30 Oz)
    (Estimated Delivery Date)
    (Friday 05/01/2020)
Certified                            $3.55
    (USPS Certified Mail #)
    (70191640000041285110)
--------------------------------------------
Total:                               $4.10
--------------------------------------------

--------------------------------------------
Credit Card Remitd                   $4.10
    (Card Name:VISA)
    (Account #:XXXXXXXXXXXX3102)
    (Approval #:06172D)
    (Transaction #:728)
    (AID:A000000031010       Chip)
    (AL:VISA CREDIT)
    (PIN:Not Required     CHASE VISA)
--------------------------------------------

Text your tracking number to 28777
(2USPS) to get the latest status.
Standard Message and Data rates may
apply. You may also visit www.usps.com
USPS Tracking or call 1-800-222-1811.


In a hurry? Self-service kiosks offer
quick and easy check-out. Any Retail
Associate can show you how.

            Preview your Mail
            Track your Packages
          Sign up for FREE @
          www.informeddelivery.com


All sales final on stamps and postage.
Refunds for guaranteed services only.
     Thank you for your business.

     HELP US SERVE YOU BETTER

   TELL US ABOUT YOUR RECENT
        POSTAL EXPERIENCE

              Go to:
   https://postalexperience.com/Pos

    840-5110-0088-001-00037-70455-02

     or scan this code with
      your mobile device:
```



Otisville FCI
Hasanoff, Sabirhan 75730083
P.O. Box 1000
Otisville, N.Y. 10963

Clerk of the Court
U.S. Courthouse
500 Pearl Street
New York, N.Y. 10007



RECEIVED
JUL 16 2020
CLERK'S OFFICE
S.D.N.Y.



USNP S.D.N.Y.

