UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

V.

Case No. 1:10-CR-00162 (KMW)

SABIRHAN HASANOFF,
        Defendant.

_____/

## AFFIDAVIT IN FURTHER SUPPORT OF MOTION
## FOR COMPASSIONATE RELEASE

State of New York      )

County of Orange       )   SS.: AFFIDAVIT OF SABIRHAN HASANOFF

Affiant, Sabirhan Hasanoff, being duly sworn, upon his oath deposes and states:

1. My name is Sabirhan Hasanoff. being of sound mind and body, over the age of eighteen years and fully capable of making this affidavit. I have personal knowledge of the facts stated in this affidavit. To my knowledge, all the facts stated in this affidavit are true and correct.

2. I am the defendant in the Motion for Compassionate Release Under 18 U.S.C. § 3582(c)(1)(A)(i).

3. I make this affidavit in further support of my motion for compassionate release for an order reducing my sentence, based on extraordinary and compelling family circumstances, to time served.

4. Attached to this affidavit as Exhibits "1" and "2" are true and correct copies of "Affidavit of Mike Foreman" and "Alex Shevgert". Their statements of how they were treated at FCI-Otisville after contracting COVID-19.

5. On June 4, 2012, I pled guilty to an Information charging two counts: (1) providing, and attempting to provide, material support and resources to a designated foreign terrorist organization, namely, Al Qaeda, in violation of 18 U.S.C. § 2339B; and (2) conspiring to provide material support and resources to a designated foreign terrorist organization, namely, Al Qaeda, in violation of 18 U.S.C. § 371.

6. In September 2013, Your Honor imposed a sentence of 180 months' imprisonment on Count One to be served consecutively to 36 months' imprisonment on Count Two, for a total of 216 months (18-years).

7. I am currently incarcerated at FCI-Otisville, P.O. Box 1000, Otisville, NY 10963, with an expected release date of September 26, 2025.

8. On March 13, 2020, The President of the United States declared a state of emergency due to the coronavirus (COVID-19) outbreak. This virus is spread by human-to-human contact, which is why states have declared residents to shelter in place and practice social distancing (standing at least six feet away from other individuals in public).

9. These measures have been taken because "social distancing" is critical to slowing the spread of COVID-19, a

2

dangerous virus spreading rapidly across the world and throughout prisons.

10. As of September 8, 2020, over 6 million people in the United States had been diagnosed with COVID-19 and 190,000 people have died of the disease.

11. My father, Abithan Hasanoff, is one of the 190,000 people that have died of the disease, on April 12, 2020.

12. Prior to his death, my father was healthy and very active in the daily care of my ageing and ailing mother, who has several serious medical conditions. Then came the coronavirus and the unexpected death of my mother's caregiver and my beloved father.

13. My mother contracted COVID-19 just as my father died from the disease. Her cognitive abilities and forgetfullness have dramatically deteriorated after her COVID-19 contraction--a common long term effect of coronavirus. And, still feels difficulty breathing from lung damage caused by the virus. This has led to her inability to perform rapid motion or any exertion as it leaves her short of breath.

14. Now that my mother is no longer under the care of my father, her condition and overall health have deteriorated. Her Psychiatrist has since diagnosed her with separation anxiety, her anxiety and ability to control her emotions have worsened. She has major depressive disorder and anxiety disorder symptoms, such as: lost appetite, isolation, and sleep disturbances and has been prescribed Mirtazapine.

3

15. My mother is also suffering from dementia. This condition has worsened rapidly to the point where she forgets potentially dangerous activities such as: leaving the door to her apartment unlocked and leaving her pre-cooked meals on the stove.

16. My mother has been prescribed Donepezil for memory loss and dementia and Memantine for her cognitive issues.

17. For several years my mother has lived with a slowly worsening degenerative disc disease and facet arthrosis which contribute to severe central stenosis. This condition causes a constant, sharp back pain and limits her mobility leaving her unable to stand or even sit for any extended period of time over 20-30 minutes. In addition to being prescribed Gabapentin for her nerve pain in the spine, she receives lumbar epidural spinal injections every 6-9 months for pain relief.

18. My mother also suffers from rheumatoid arthritis in her joints and osteo-arthritis in both knees, for which she is prescribed Meloxicam. The rheumatism is particularly acute in her finger joints weakening her grasp of objects, which make it difficult for her to do her daily living routines. She has had one knee replacement surgery and is awaiting replacement of her second knee.

19. The pain and partial immobility caused by her osteo-artthritis and degenerative disc disease requires her to use a walker.

20. My mother needs assistance with daily activities such as: dressing herself, bathing, meal preparation, clean up,

routine laundry, and any outside errands. Put simply, she "is no way" a "functional or independent adult."

21. My mother requires constant supervision and assistance for every single task. In the absence of a caregiver, my mother's health is significantly deteriorating.

22. Although I have a younger sister, Gulsara Akyol, she makes several long trips to Brooklyn each week from Long Island, to assist our mother, my sister cannot provide the full time attention and level of care our mother requires because she lives separately, has three young girls all under the age of ten, the youngest still breastfeeding, and most importantly, her husband's exposure to COVID-19 at work, as a frontline medical worker, my sister risks reinfecting our mother traveling back-and-forth to care for her.

23. My mother recently suffered some burns from cooking oil, resulting in burns marks that needed treatment to prevent infection. Because my sister cannot adequately give our mother the full time attention that she requires, her burns went unnoticed and untreated for some time.

24. The change in my family circumstances do not presently allow for the adequate care of my mother.

25. I am the only one available to provide the full time attention and care my mother requires.

26. My priority is the safety and well being of my mother. I've already lost two remaining grandparents during my incarceration and now my father. I will do everything in my power

to not lose my mother untimely to COVID-19.

27. My family currently resides at 19 Boxwood Lane, Farmingdale, NY 11735, where I would live with my mother. She would have the full time attention and care that she needs.

28. In a "Risk and Needs Assessment Tool Targeting Estimated Risk and Needs ("PATTERN"), my recidivisim risk level was determined to be "minimum" by BOP officials--the lowest possible risk level.

29. I am fully rehabilitated and pose no danger to any person or society if released. I committed my crime as a young man with no criminal record. No one was physically injured as a result of my crime.

30. I have accepted responsibility for my poor choices and dedicated rehabilitating myself and becoming a better person during the nearly 13-years spent incarcerated. While in prison, I worked hard to better myself and participated in over 600 hours of education and wellness courses--including business and management, personal finance, parenting, and positive mental attitude. I also teach Accounting and Finance and Business ACE classes using my background in Accounting and Business, at FCI-Otisville Education Department.

31. The fact that I will be asset to the community rather than a danger, is further demonstrated by the multiple offers of employment that have been extended to me.

32. I have secured a job offer from KJR&SONS INC. in New Jersey, a wholesale business. The owner Kurban J. Ruzehaji, can

be reached by phone at 201-453-1220; by email at kjrsonsinc@gmail.com.

33. Farid Tursonzadah, the owner of EXCEL WHOLESALE DISTRIBUTORS, a wholesale convenience store distribution business based in Queens, NY, is also prepared to hire me and allow me to work from home, so that I can look after my mother. Mr. Tursunzadah can be reached by phone at 718-321-3103.

34. I have strong family support, that will serve as my bedrock should I be released. I maintained close ties with my parents, siblings, extended family and friends.

35. My extended family and friends have been hurt by my previous actions and as such, I owe them a great deal of thanks and appreciation. I intend to earn the trust that I have taken from each of these persons. I hope to be involved in each of their lives and be someone they can be proud of.

36. I have a strong desire to give back to my community. I picture myself guiding the local youths in the community and becoming someone the youth can look up to.

37. Backed by this support, and in light of my history, there is no reason to believe that I would present a danger to society.

38. Since my incarceration, I have learned a great deal of respect for the law. I strongly desire to be a productive member of society and be able to gain back the trust and respect from my family and friends and each new person I meet.

39. With the passage of § 603 of the Fair Sentencing Act, amending the procedure by which a federal prisoner could seek compassionate release, P.L. 115-391, 132 Stat. at 5238; 18 U.S.C. § 3582(c)(1)(A), I now seek compassionate release on my extreme family circumstances--my mother's deteriorating health in the absence of a caregiver and me being the only one available to provide the full time attention and care that she requires-- constituting extraordinary and compelling reasons warranting a reduction in my sentnce.

40. From my perspective my mother's life--not only my liberty--is on the line, creating a powerful incentive to abide by any release condition that is imposed upon me.

41. Individuals who are incarcerated are at great risk of contracting the coronavirus--quite simply, the conditions of confinement make social distancing next to impossible.

42. There is simply too many people in prison, and the reality that incarcerated individuals live together, eat together, sleep in close proximity to one another, and co-exist together in such close quarters makes prison facilities, for the lack of a better term, petri dishes.

43. Despite the BOP's efforts to limit the spread of COVID-19, the virus continues to spread rapidly throughout BOP facilities.

44. Covid-19's rapid spread through the BOP system is an unprecedented public health crisis. Begining in March 2020, FCI-Otisville suffered an outbreak of COVID-19 with well over two

dozen inmate and staff infectiions. (http://www.bop.gov/coronavirus/index.jsp). These numbers are likely under counted due to the lack of wider testing--FCI-Otisville only tests symptomatic inmates.

45. With at least two confirmed cases in my Housing Unit-GA, I am at a high risk of contracting COVID-19. **See** (Ex. 1 and 2).

46. Inmates who contract the virus will need urgent medical care and prisons--FCI-Otisville--do not have adequate medical care capacity to deal with the spread of the virus within the institution. Id.

AFFIANT FURTHER SAYETH NAUGHT.
SIGN, SWORN and EXECUTED this 9 th day of September 2020.

Sabirhan Hasanoff, AFFIANT

SUBSCRIBED AND SWORN TO
BEFORE ME this 9 th day of September 2020

Joshua A. Bird

Notary Public, in and for the State of New York.

My commission expires:
Witness my hand and official seal.

Signature of Notary Public

9

# EXHIBIT 1

Michael Foreman
Reg. No. 53678-037
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

---

AFFIDAVIT

State of New York          )

County of Orange           )     SS.: AFFIDAVIT OF MICHAEL FOREMAN

Affiant, Michael Foreman, being duly sworn, deposes and states:

1. My name is Michael Foreman. I am over 18 years of age. I am currrently incarcerated at the Federal Correctional Institution Otisville ("FCI Otisville"), in Otisville, New York. I am fully competent to make this affidavit and I have personal knowledge of the facts stated in this affidavit. To my knowledge, all of the facts stated in this affidavit are true and correct.

2. While incarcerated at FCI Otisville I contracted the COVID-19 virus.

3. On March 29, 2020, while at work in food service, I felt ill and reported it to my supervisor and was sent to medical. At medical my temperature was taken and it was normal $98.6^{\circ}$. I was sent back to work.

4. The next morning, March 30, 2020, still feeling sick, medical staff was called to my Housing Unit GA. Medical Staff Ms. Stewart took my temperature and it was above $100^{\circ}$.

5. Ms. Stewart then began to ask me questions about how I was feeling and if I have taken any medications. I told her that I had taken an Ibuprofen.

6. Ms. Stewart then made a phone call and five minutes later told me that I had to be quarantined. I was then instructed that I had to pack up all my belongings and that I had to move to Housing Unit D. Housing Unit D is the designated Housing Unit for possible COVID-19 inmates.

7. During my time in quarantine in Housing Unit D, I had to be rushed to the ER because I had a high grade fever of $102^{\circ}$ and I was severely dehydrated. My blood pressure was also extremely low at 80/50 and falling.

8. Once I reached the ER I learned, by the discussion between the ER doctor and FCI Otisville Medical staff--Mr. Kabonick--that by the facility's negligence of not treating my fever for 5-days had put me in this grave state.

9. I was tested on March 31, 2020 and had a fever from that date until April 4, 2020, when I was rushed to the ER. For these 5-days I received no medications or any treatment despite the numerous complaints I made.

10. My COVID-19 test results was delayed for some unknown reason. About a week later my test result revealed a positive reading for the COVID-19 virus. See (Exhibit 1).

11. After being stabilized in the ER with I.V. and medications, I was taken back to the facility where I recovered and released back into population. I was not retested before

being released back into population.

12. On April 17, 2020, I returned back to work at food service where I again was reexposed to the COVID-19 virus and quarantined. I was released back into population on July 16, 2020. Both, the Food Service Administrator Wisniewiski and Food Service Staff Officer Pizzamenti contracted the COVID-19 virus.

13. Here, at FCI Otisville inmates are at great risk of contracting the COVID-19 virus--quite simply, the conditions of confinement make social distancing next to impossible.

I signed this affidavit on August   , 2020 at Otisville, New York.


_____
Michael Foreman, Affiant



SUBSCRIBED AND SWORN TO
BEFORE ME this    day of August, 2020
at Otisville, New York

_____ Joshua A. Bird
Notary Public, in and for
the State of New York.

My Commission expires: 12/3/2022
Witness my hand and official seal.

_____
Signature of Notary Public

3

# Bureau of Prisons
# Health Services
# Clinical Encounter

| | | | |
|---|---|---|---|
| Inmate Name: FOREMAN, MICHAEL | | | Reg #: 53678-037 |
| Date of Birth: 06/26/1967 | Sex: M Race: BLACK | | Facility: OTV |
| Encounter Date: 04/15/2020 16:28 | Provider: Linley, Alphonso MD | | Unit: D01 |

Physician - Follow up Visit encounter performed at Health Services.

**SUBJECTIVE:**

**COMPLAINT 1**  **Provider:** Linley, Alphonso MD

**Chief Complaint:** Other Problem

**Subjective:** Patient tested positive for COVID 19 since 3/31/2020.Patient is now asymptomatic with no temperature since 4/8/2020.Patient also denies any sob or cough.

**Pain:** Not Applicable

**ROS:**

**HEENT**

Head

Yes: Within Normal Limits

No: Headaches

**Cardiovascular**

General

Yes: Within Normal Limits

No: Angina

**Pulmonary**

**Respiratory System**

Yes: Within Normal Limits

No: Cough - Dry

**OBJECTIVE:**

**Pulse:**

| Date | Time | Rate Per Minute | Location | Rhythm | Provider |
|---|---|---|---|---|---|
| 04/15/2020 | 16:27 OTV | 98 | | | Linley, Alphonso MD |

**Blood Pressure:**

| Date | Time | Value | Location | Position | Cuff Size | Provider |
|---|---|---|---|---|---|---|
| 04/15/2020 | 16:27 OTV | 124/84 | | | | Linley, Alphonso MD |

**SaO2:**

| Date | Time | Value(%) | Air | Provider |
|---|---|---|---|---|
| 04/15/2020 | 16:27 OTV | 98 | | Linley, Alphonso MD |

**Exam:**

General

Affect

Yes: Pleasant, Cooperative

Pulmonary

Auscultation

Yes: Clear to Auscultation

Cardiovascular

Auscultation

# EXHIBIT 2

Alex Shevgert
Reg. No. 50255-018
FCI Otisville
P.O. Box 1000
Otisville, NY 10963

---

AFFIDAVIT

State of New York      )

County of Orange       )   SS.: AFFIDAVIT OF ALEX SHEVGERT

Affiant, Alex Shevgert, being duly sworn, deposes and says:

1. My name is Alex Shevgert. I am over 18 years of age. I am currrently incarcerated at the Federal Correctional Institution Otisville ("FCI Otisville"), in Otisville, New York. I am fully competent to make this affidavit and I have personal knowledge of the facts stated in this affidavit. To my knowledge, all of the facts stated in this affidavit are true and correct.

2. I am 64 years old and I have been incarcerated for the last 14 years.

3. I suffer from numerous medical conditions, including high blood pressure, asthma, and have had two strokes in the past several years. I take a total of 15 pills a day all provided to me by the Bureau of Prisons ("BOP").

4. The Centers for Disease Control and Prevention ("CDC") has issued guidance that individuals at higher risk of contracting COVID-19--adults over 60 years old and people with chronic medical conditions (Asthma)--take immediate preventive

actions, including avoiding crowded areas--which is simply, impossible to do in prison.

5. I am among the group of people CDC has categorized as at-risk for contracting COVID-19, a dangerous illness spreading across the world and through the federal prisons.

6. On March 11, 2020, the World Health Organization officially classified COVID-19 as a pandemic. Thereafter, in or about the end of March 2020, FCI Otisville went on lockdown.

7. During the lockdown inmates were allowed to shower 3 times a week--sharing shower stalls. Inmates also shared the telephones and computers. Our meals was brought to our Housing Unit by staff and passed out by staff.

8. Nothing was set up to minimize the spread of the virus, all we got was a mask and daily temperature check.

9. Meanwhile, the staff at FCI Otisville were leaving and returning daily. Viruses of all kind have multiple entry points, and those that enter--COVID-19 virus--tend to spread fast.

10. Staff entering FCI Otisville facility had their temperature taken and if not symptomatic, they were allowed to enter the facility and interact with the inmates, potentially bringing COVID-19 into the facility where inmates are held in large numbers, close quarters, and low sanitary conditions.

11. The extent of FCI Otisville's COVID-19 response was a lockdown and daily temperature checks.

12. With confirmed cases of COVID-19 at FCI Otisville, staff should have been taking every necessary action to protect

vulnerable inmates. Conditions of confinement create the ideal environment for the transmission of contagious disease. COVID-19 is particularly dangerous to older inmates and inmates with pre-existing medical conditions.

13. While incarcerated at FCI Otisville I contrated the COVID-19 virus.

14. I spend most of each day with a cellmate in a small cell "that is barely large enough for a single occupant," where I am "breathing recirculated air" and unable to practice proper hygiene."

15. In or around April 4, 2020, I was feeling ill, my temperature was taken and it was normal. Later that evening I felt worse and this time my temperature was over $100^{\circ}$. I was swabbed and tested for COVID-19. I had to be swabbed two days later again because the first one was lost. The second test came back positive after about 4-5 days later.

16. I was immediately transferred to Housing Unit D. Housing Unit D is the designated Housing Unit for positive COVID-19 inmates.

17. While in quarantine I did not receive any treatment for high fever, chills any my other COVID-19 sysptoms. I was vomiting and using the bathroom constantly. During my time in quarantine I received no medical treatment.

18. After 9 days of quarantine, looking like death itself, I was released back into general population--Housing Unit GA-- without being retested. I still wasn't feeling well.

19. After 4 days in back in Housing Unit GA still not feeling well, I argued with medical staff Kabonick because I was not being treated. Kabonick actually yelled at me saying that I was fine, that I was just pretending to be sick. Meanwhile I collapsed and couldn't even stand up. Finally Lt. Munoz came to my Housing Unit GA and they took me to medical where they x-rayed me and found I had severe pneumonia from the COVID.

20. I was again sent back to Housing Unit D. I was there for 3 weeks and given injections for pain and antibiotics for pneumonia.

21. I was returned back to my Housing Unit GA in or around the second week of May, 2020--in this time I lost 40 pounds.

22. During all this I was treated very inhumanely. The medical negligence I went through as a 64 year old with documented health issues and high COVID-19 risk factors is the norm of how poor the medical care is at FCI Otisville.

I signed this affidavit on August   , 2020 at Otisville, New York.

Alex Shevgert, Affiant

4

SUBSCRIBED AND SWORN TO
BEFORE ME this        day of August, 2020
at Otisville, New York

Joshua A Bird

Notary Public, in and for
the State of New York.

My Commission expires: 12/3/2022
Witness my hand and official seal.

Signature of Notary Public

5



**Leading Teleradiology**

# FCI Otisville OTV

Patient: **SHEVGERT, ALEX (Male)**          DOB:        02/08/56
Register#: **50255-018**                            Age:        64
Date: 05/21/20 10:19                                Status:     OP
Slicecount: 2
History: This is a follow-up examination. Patient was SARS CoV2 positive. He reports feeling better. Still complaining of weakness, fatigue and dizziness.
Priors: prior CXRs on 4/21, 4/24 and 4/28/2020
Exams: FILM CXR 2 VIEWS
Referring Phy: Linley
Ordering Phy:
Ordering Phy #:
Accession Numbers: 202#BOP00178127

**Final Report**

Exam: FILM CXR 2 VIEWS

HISTORY: COVID positive. Follow-up

TECHNIQUE: Frontal and Lateral views obtained

COMPARISON: May 7, 2020

FINDINGS: The cardiac silhouette is normal. Trachea is midline. Mediastinal and hilar contours are unremarkable. . There is near complete resolution of peripheral opacities in both lungs. Lungs and pleural spaces are otherwise clear. Thoracic musculoskeletal structures are age appropriate. Visualized upper abdomen is grossly unremarkable.

IMPRESSION:
Near complete resolution of peripheral opacities of both lungs.

Radiologist:                    Maurice Yu, MD

Study ready at 10:20 and initial results transmitted at 10:33

# UNITED STATES POSTAL SERVICE®



## PRIORITY MAIL

**P**

### PRIORITY MAIL 1-DAY®

**US POSTAGE PAID**

**$0.00**

Origin: 10963
09/16/20
3562650083-25

*Retail*

EXPECTED DELIVERY DAY: 08/17/20

C014

1 Lb 1.20 Oz

1020

SHIP
TO:
500 PEARL ST
New York NY 10007-1316

**USPS TRACKING® NUMBER**

9505 5147 8526 0260 0951 64

FROM:

Sabirhan Hasanoff
Reg. No. 75730-083
FCI Otisville
P.O. Box 1000
Otisville, New York 10963

TO:



RECEIVED
SEP 17 2020
CLERK'S OFFICE
S.D.N.Y.

CLERK
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
UNITED STATES COURTHOUSE
500 PEARL STREET
NEW YORK, NY 10007-1312



Attn: Sarah Tomasello 2540

PS000001000014

Domestic only

×  For Domestic shipments, the maximum weight is 70 lbs. For International shipments, the maximum weight is 4 lbs.

This packaging is the property of the U.S. Postal Service® and is provided solely for use in sending Priority Mail® shipments. Misuse may be a violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service: October 2018; All rights reserved.