UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

UNITED STATES OF AMERICA,

          -against-

SABIRHAN HASANOFF,

               Defendant.

--------------------------------------------------------X

10-CR-162 (KMW)

**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

       Defendant Sabirhan Hasanoff has moved to reduce his term of imprisonment under the federal compassionate release statute, 18 U.S.C. § 3582(c)(1)(A).   Hasanoff argues that he has become the sole available caregiver for his ailing mother since his father's death in April 2020; he has a record of extraordinary post-sentencing rehabilitation; and he is at risk of contracting COVID-19 if he remains incarcerated.   (ECF No. 257.)   The Government opposes Hasanoff's motion.   (ECF No. 260.)

       Because Hasanoff has demonstrated extraordinary and compelling circumstances for release based on family circumstances and his record of rehabilitation, his motion is GRANTED. The Court reduces Hasanoff's sentence to time served, and orders his immediate release from prison.   Hasanoff shall abide by all the terms and conditions of supervised release that were imposed at his original sentencing and that are memorialized in his judgment of conviction. (ECF No. 142.)   In addition, as requested by the Government, Hasanoff shall abide by an additional condition of supervised release regarding electronic communications.   (Gov't Opp'n at 21 n.4.)

## BACKGROUND

Hasanoff was arrested in April 2010 in connection with his alleged contacts with the international terrorist group al-Qaeda.   On June 4, 2012, pursuant to a plea agreement, Hasanoff pled guilty to a two-count information, which charged him with (i) providing and attempting to provide material support and resources to al-Qaeda, in violation of 18 U.S.C. § 2339B; and (ii) conspiring to provide material support and resources to al Qaeda, in violation of 18 U.S.C. § 371. (Gov't Opp'n at 2.)

On September 30, 2013, Hasanoff was sentenced principally to a term of 18 years of imprisonment, followed by three years of supervised release.   Judgment was entered on October 3, 2013.   (*Id.* at 5.)   Hasanoff is incarcerated at the Otisville Federal Correctional Institute ("FCI Otisville"), and the Bureau of Prisons ("BOP") projects a release date of September 26, 2025, including good-time credit.   (*Id.*)

On April 12, 2020, Hasanoff's father passed away due to infection with COVID-19. (Mot. at 4, Exs. A, B.)   In a letter dated April 26, 2020, Hasanoff's sister made an administrative request on Hasanoff's behalf to the BOP, asking for compassionate release based on (i) the death of their father, who had provided for Hasanoff's mother, wife, and children; and (ii) Hasanoff's post-sentencing rehabilitation.   (Gov't Opp'n at Ex. 1.)   The BOP denied Hasanoff's sister's request on July 13, 2020.   (*Id.* at Ex. 2.)   According to BOP records, Hasanoff also submitted an administrative request to be placed in home confinement, based on risk of exposure to COVID-19.   That request was denied on August 25, 2020.   (Gov't Opp'n at 5; Gov't Suppl. at 1, ECF No. 264.)   The BOP is not currently considering Hasanoff for furlough, pursuant to 18 U.S.C. § 3622.   (Gov't Opp'n at 6.)

On July 17, 2020, proceeding *pro se*, Hasanoff filed the instant motion.   On September 17, Hasanoff filed a supplemental memorandum and declarations regarding his mother's medical

conditions.   (ECF No. 259.)   The Government filed its opposition on September 22.   On

October 18 and 20, respectively, Hasanoff and the Government filed additional supplemental

submissions.   (ECF Nos. 263, 264.)

## LEGAL STANDARD

Under 18 U.S.C. § 3582(c)(1)(A), as modified by the First Step Act, Pub. L. No. 115-391,

132 Stat. 5194 (Dec. 21, 2018), a court may reduce a defendant's sentence upon motion of the

Director of the BOP, or upon motion of the defendant.   A defendant may move under Section

3582(c)(1)(A) only after the defendant has "fully exhausted all administrative rights to appeal a

failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30

days from the receipt of such a request by the warden of the defendant's facility, whichever is

earlier."   *Id.*

A court may reduce a defendant's sentence if it finds that "extraordinary and compelling

reasons warrant such a reduction" and "such a reduction is consistent with the applicable policy

statements issued by the Sentencing Commission."   *Id.* § 3582(c)(1)(A)(i).   In making this

determination, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a), to

the extent they apply.   *Id.* § 3582(c)(1)(A).

The commentary to Section 1B1.13 of the Sentencing Guidelines provides a

non-exhaustive list of circumstances in which extraordinary and compelling reasons may exist.

U.S.S.G. § 1B1.13, n.1.   The Second Circuit recently described these guidelines, however, as

"clearly outdated" in light of the First Step Act.   *United States v. Brooker*, 2020 WL 5739712,

at *6 (2d Cir. Sept. 25, 2020).   Noting the distinction between motions brought by the BOP and

those brought by defendants themselves, the Second Circuit held that the guidelines "apply[] only

to those motions that the BOP has made."   *Id.*   They are not "'applicable' to compassionate

release motions brought by defendants."   *Id.*   The First Step Act thus "freed district courts to

3

consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *Id.* at *7. Nothing in the "now-outdated version of Guideline § 1B1.13" limits a court's discretion on such motions. *Id.*

A defendant's rehabilitation "alone" is not considered an extraordinary and compelling reason. 28 U.S.C § 994(t). But, as a number of courts have recognized, rehabilitation combined with other factors can constitute, "in their entirety," extraordinary and compelling reasons. *United States v. Torres*, 2020 WL 2815003, at *8 (S.D.N.Y. June 1, 2020) (Stein, J.) (citation omitted); *see also United States v. Millan*, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) (Preska, J.) ("[L]egislators' use of the modifier 'alone' evidences that they believed that rehabilitation *is relevant* to the question of whether a sentence should be reduced.") (emphasis in original).

## DISCUSSION

### I. Hasanoff Has Exhausted His Administrative Remedies with Respect to His Family Circumstances and Rehabilitation

Hasanoff's motion asserts three grounds for compassionate release. First, Hasanoff asserts that he has become the sole available caregiver for his mother. (Mot. at 2, 14.) Second, he asserts that he has a remarkable record of rehabilitation. (*Id*. at 2, 14, 22-23.) Third, he asserts that he has an increased risk of contracting COVID-19 at FCI Otisville. (*Id.* at 3, 14.)

The Government does not dispute that Hasanoff has exhausted his administrative remedies with respect to the first two grounds. (Gov't Opp'n at 6; Gov't Suppl. at 1.) It contends, however, that Hasanoff's motion is premature as to the third ground, because the prior administrative request "was not based on risk of COVID-19 exposure." (Gov't Opp'n at 6, 9.) Because Hasanoff "never requested release from the BOP on that basis," the Government asks the Court to "deny Hasanoff's COVID-19-based request" until he has done so. (*Id.* at 1, 9-10.)

4

The Court need not decide whether Hasanoff has exhausted his remedies as to the issue of his COVID-19 risk.   For the reasons set forth below, Hasanoff's motion is granted based on the combination of his family circumstances and his extraordinary record of rehabilitation, without consideration of Hasanoff's claim that he is at heightened risk of contracting COVID-19. Hasanoff has exhausted his administrative remedies with respect to the two grounds on which his motion is being granted, and his motion is ripe for consideration as to those grounds.[1]

## II.  Hasanoff Has Demonstrated Extraordinary and Compelling Reasons for Compassionate Release

Hasanoff has demonstrated that his mother requires constant care and that he has become her only available caregiver.   In addition, Hasanoff has shown an unparalleled record of rehabilitation during his decade of incarceration.   Considered in their entirety, these circumstances constitute extraordinary and compelling reasons for granting compassionate release.  *See* 18 U.S.C. § 3582(c)(1)(A).

### A.  Family Circumstances

As an initial matter, the Government argues that caring for a parent does not meet the criteria of the Sentencing Commission's policy statement, which states that extraordinary circumstances may exist when the caregiver for a defendant's minor child or children has died or become incapacitated, or the defendant's spouse or partner has become incapacitated and the defendant is the only available caregiver.   (Gov't Opp'n at 12-13).

The Government's argument is foreclosed by the Second Circuit's decision in *Brooker*,

---

[1] Although exhaustion has been discussed here on an issue-by-issue basis, it should be noted that at least two courts in this district have held that there is no "issue exhaustion" requirement for motions for compassionate release.   *Torres*, 2020 WL 2815003, at *5; *see also United States v. Gluzman*, 2020 WL 4233049, at *11 (S.D.N.Y. July 23, 2020) (Liman, J.) ("[T]he statute contains no requirement that the basis for the defendant's motion for compassionate release to the court be identical to the basis of the defendant's request to the warden of the BOP to bring a motion on the defendant's behalf.").

which allows a court to consider circumstances in addition to those set forth in the

above-mentioned policy statement.   *Brooker*, 2020 WL 5739712, at *6-*8.[2]

In a thorough set of filings, which include affidavits, letters, and medical records,

Hasanoff has provided ample evidence that his mother is in poor health and requires home care,

and that Hasanoff himself has become the only available caregiver since his father's death.

(*E.g.*, Mot. at Exs. A-B; Def.'s Sept. 17 Suppl. at Exs. A-H.)

Hasanoff's mother's mental health is in decline.   (Mot. at 4, Ex. B.)   A report from her

neurologist confirms a diagnosis of "vascular dementia" and identifies symptoms including

"severe headaches, memory loss, and cognitive disorder."   (Def.'s Sept. 17 Suppl. at Ex. C, p.

1.)   Hasanoff's mother has been prescribed medication that is commonly used to treat dementia

in patients with Alzheimer's disease.   (*Id.* at Ex. D, pp. 3-6.)   Her mental health has

deteriorated further since the death of her husband.   According to a September 10, 2020 letter

from her psychiatrist, Hasanoff's mother suffers from "Major Depressive Disorder and

Generalized Anxiety Disorder."   (*Id.* at Ex. B, p. 1.)   As a result of these conditions,

Hasanoff's mother has felt isolated, lost her appetite, and struggled to sleep.   (*Id.* at 2.)   These

cognitive impairments are dangerous.   Hasanoff's mother has repeatedly failed to lock her

apartment, has failed to remove meals from a hot stove, and recently suffered burns from cooking

oil, which "went unnoticed and untreated for some time"   (*Id.* at 4, Attach. 3, p. 2.)

In addition, Hasanoff's mother suffers from several physical ailments.   These include

rheumatoid arthritis, spinal arthrosis, and osteoarthritis in both knees.   (Mot. at 4, Ex. B; Def.'s

Sept. 17 Suppl. at Exs. C, E, F.)   Having had one knee replacement operation in 2014,

---

[2]  The Government acknowledges that, prior to *Brooker*, courts did not read the guidelines so rigidly as to apply only to children, spouses, or partners.   Rather, courts have held that an aging or ill parent may present extraordinary circumstances if the defendant is the only available caregiver.   (Gov't Opp'n at 13 (citing *United States v. Lisi*, 2020 WL 881994 (S.D.N.Y. Feb. 24, 2020) (Failla, J.).)

Hasanoff's mother now awaits a second.   (Mot. at 4, Ex. B; Def.'s Sept. 17 Suppl. at Ex. F.)
She suffers from back pain and knee pain, uses a walker, and has limited mobility.   (Mot. at 4,
Ex. B.)   Earlier this year, Hasanoff's mother contracted COVID-19, and she "still feels
difficulty breathing."   (Def.'s Sept. 17 Suppl. at Attach. 1, ¶ 13; *see also id.* at Ex. H, p. 2.)

Hasanoff's mother's neurologist states that she "requires … a home care assistant as she
is unable to take care of herself and has extreme difficulty … going about activities of daily
living."   (*Id.* at Ex. C, p. 1.)   A home health aide would be required "for 8 hours, 7 days a week"
in order to maintain a safe living environment and help Hasanoff's mother move, dress, wash,
and eat.   (*Id.*)   The evidence cited above, which is uncontroverted, suffices to show that
Hasanoff's mother is in poor mental and physical health and is unable to care for herself
independently.

The Government argues that Hasanoff has not met his burden of showing that he is his
mother's only available caregiver.   (Gov't Opp'n at 14.)   But Hasanoff has provided
convincing and detailed evidence to the contrary, which is uncontroverted.   The relatives who
might ordinarily be counted on to care for Hasanoff's mother (his wife and his sister) are unable
to care for her.

First, Hasanoff's wife states in her affidavit that caring for her own mother absorbs all of
her time available for caregiving.   She thus is not able to act as an aide or to have Hasanoff's
mother live with her.   (Def.'s Oct. 18 Suppl. at Ex. A, ¶¶ 3-4, 10.)   Furthermore, Hasanoff's
wife has limited financial resources.   Since 2010, Hasanoff's father had provided "primary
financial support" to Hasanoff's wife and children.   (Mot. at Ex. C.)   Hasanoff's wife has now
lost that support.   The COVID-19 pandemic also cost Hasanoff's wife her job at a department
store and, because her children's schools were closed, and later partially reopened, she has been
required to stay at home to provide childcare and home schooling.   (*Id.*; Def.'s Oct. 18 Suppl. at

Ex. A, ¶ 9.)

Second, Hasanoff's sister is unable to provide a home to her mother or to provide the requisite care through regular visits.   In a letter, Hasanoff's sister explains that she has a "small" home with three young children of her own, all under the age of ten, whose presence would agitate Hasanoff's mother and worsen her health.   (Def.'s Sept. 17 Suppl. at Ex. H, p. 2.)   If her mother were to live with her, her mother would be exposed to a heightened risk of infection with COVID-19, because Hasanoff's sister's husband works as a doctor.   (*Id.*)

Although Hasanoff's sister has been able to visit her mother, these visits fall short of the care that Hasanoff's mother requires.   The visits are "complicated by the need to socially distance" and, even when taking such precautions, Hasanoff's sister is fearful of exposing her mother to COVID-19.   (*Id.*)   Given these concerns and the needs of her own young children, Hasanoff's sister "simply cannot provide the full-time attention that [her mother] requires." (*Id.*)   A letter from Hasanoff's mother shows that she shares her daughter's concerns and that she feels "alone and neglected" without her son and "burdensome" to her daughter.   (*Id.* at Attach. 3, pp. 1-2.)

Third, professional home aides are not a viable alternative.   Hasanoff has stated that it is his intention, if released, "to work from home while also providing constant, full time care and attention to his mother."   (Def.'s Oct. 18 Suppl. at 3-4.)   That arrangement, unlike the back-and-forth travel that employing a home health aide entails, may limit Hasanoff's mother's exposure to COVID-19.   (*Id.*)

The Government asserts that Hasanoff has not explained how he may both work and care for his mother full-time.   (Gov't Opp'n at 14.)   But Hasanoff has submitted evidence of an employment offer from a convenience store distribution business, which states that his work "can be done remotely if need be to help facilitate [Hasanoff's] caring for his mother."   (Def.'s Sept.

17 Suppl. at Ex. M.)    There is no reason to doubt that Hasanoff may secure this (or similar) employment that would allow him both to earn a living and to care for his mother.

In light of the above, Hasanoff has demonstrated that his mother requires constant care and that Hasanoff himself is the only available caregiver.

### B.   Rehabilitation

In determining whether Hasanoff's sentence should be reduced, his rehabilitative efforts may be considered in combination with the foregoing family circumstances.    *See United States v. Millan*, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) (Preska, J.).    Hasanoff's striking and unique efforts, over a period of ten years, provide powerful evidence in favor of release.

Hasanoff's rehabilitation has centered on religious activities.    He represents the Muslim community at FCI Otisville as the inmate liaison with senior staff.    (Mot. at 4.)    He has worked in the chapel as an orderly.    (*Id.* at 22.)    He has taught classes focusing on morals, prayer, tolerance, and moderation in Islam.    (*Id.* at Ex. F-1.)    Of particular note is that, after reading a news article in 2018, Hasanoff proposed that FCI Otisville establish a "deradicalization program" for inmates convicted of terrorism-related offenses.    (*Id.* at 23, Ex. G-1.)    Hasanoff offered to facilitate the program, and he eventually met with representatives of the National BOP Program Activities Department, who are currently considering the proposal.    (*Id.* at 23.)

Several individuals have written letters commending Hasanoff for his rehabilitative efforts and attesting to his good character.    For example, Chaplain Lee at FCI Otisville states that, since January 2017, Hasanoff has been "a true asset" to the Chaplaincy, that he has organized and led Muslim prayer services" and facilitated a range of faith-based programs.    (*Id.* at Ex. F-1.)    He adds that Hasanoff has always been and that he always is respectful, professional, positive, and willing to assist other inmates regardless of their faith.    (*Id.*)    Staff Chaplain Reverend Father Ngozi Osuji, who also interacted with Hasanoff during his detention at

FCI Otisville, echoes these positive sentiments.   Father Osuji describes Hasanoff as polite, approachable, and deeply knowledgeable—qualities that have allowed Hasanoff to hold the leadership position of Muslim Faith Liaison for more than two years.   (*Id.* at Ex. F-2.) Hasanoff's tenure in this position is unusual.   In Father Osuji's words, "[t]his is not a common experience in a prison setting with big numbers of faith groups."   (*Id.*)

In addition, Hasanoff has participated in and conducted extensive educational programming during his imprisonment.   He has completed numerous courses, including a 240-hour Aquaculture course, in which he earned "excellent scores."   (*Id.* at Exs. E-1, E-2, F-3.) He has taught classes in accounting and finance, employing his prior professional experience as an accountant.   Father Osuji states that the "positive impact" of Hasanoff's "singular contribution … to [FCI Otisville] cannot be overstated."   (*Id.* at Ex. F-2.)   He states that Hasanoff has greatly assisted other inmates in their classes.   (*Id.*)   Hasanoff points out that he has persisted with educational and faith-based programming even though he is not eligible for additional time credits on the basis of such programs.   (*Id.* at 23; 18 U.S.C. § 3632(d)(4)(D)(xlvii), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018).)

The Government argues that Hasanoff's post-offense rehabilitation does not support a sentence reduction because such rehabilitation is already reflected in his sentence.   (Gov't Opp'n at 11.)   The Government is correct that Hasanoff received a 24-month credit based on his "outstanding contribution" over three-and-a-half years as a member of the Muslim community at the Metropolitan Correctional Center ("MCC") in New York.   (*Id.*; Mot. at Ex. F-4; Sent. Tr. at 21, ECF No. 150.)   At the time of sentencing, the Court mentioned, as a mitigating factor, Hasanoff's contributions at the MCC as suggestive of his having "turned over a new leaf" and engaged in "what appears to be rehabilitation" in detention.   (Sent. Tr. at 21.)

Since sentencing, Hasanoff has served seven more years in detention.   As set forth above, Hasanoff's contributions during those years far surpass the contributions he had made pre-sentencing.   At FCI Otisville, Hasanoff has not simply been "attending" and "assisting" in prayer services and acting as "helper" for the Muslim community, as he did before he was sentenced.   (Mot. at Ex. F-4.)   Rather, he has held faith-based leadership positions, taught classes to fellow inmates, and attempted to initiate new deradicalization programming at FCI Otisville.   Hasanoff's sentence does not (and could not) reflect such extraordinary rehabilitation. The Court concludes that Hasanoff's record is exceptionally strong—this is a rare case in which a defendant "exceeds the bounds of what we consider rehabilitation."   *United States v. Rodriguez*, 2020 WL 5810161, at *5 (S.D.N.Y. Sept. 30, 2020) (Rakoff, J.) (quoting *United States v. Torres*, 2020 WL 2815003, at *8 (S.D.N.Y. June 1, 2020) (Stein, J.)).

Hasanoff's family circumstances and extraordinary rehabilitation, taken in their entirety, constitute extraordinary and compelling reasons in favor of compassionate release.

### III.  Granting Compassionate Release Is Consistent with the Sentencing Factors

The sentencing factors set forth in 18 U.S.C. § 3553(a) do not "outweigh the 'extraordinary and compelling' reasons warranting compassionate release" in this case.   *United States v. Ebbers*, 432 F. Supp. 3d 421, 430-31 (S.D.N.Y. Jan. 8, 2020) (Caproni, J.).

The most important factor in Hasanoff's sentence is general deterrence.   (Sent. Tr. at 21.)   Hasanoff has been in detention for ten years.   Releasing Hasanoff 59 months early from a 216-month sentence, however, in order to allow him to care for his frail mother and in recognition of his unique record of rehabilitation, will not undermine general deterrence.   Early release also will not undermine the goals of achieving just punishment and promoting respect for the law.   18 U.S.C. § 3553(a)(2)(A), (B).

Hasanoff's crimes were extremely serious.   (Sent. Tr. at 19.)   However, Hasanoff

11

points out that when he committed the offenses, he was in his early thirties, did not "have a good sense of his place in society," and was susceptible to seeking guidance from "all the wrong places." (Mot. at 17.)   These circumstances have changed.   In his motion and supporting papers, Hasanoff sincerely and repeatedly expresses remorse for his actions.   He recognizes that he has a supportive network of family and friends, plans to prioritize his mother's health, and has a "strong[] desire" to return to, and be a productive member of, his community.   (*Id.* at 18; Def.'s Sept. 17 Suppl. at Attach. 1, pp. 6-7.)   The BOP considers Hasanoff to be at "minimum risk" of recidivism.   (Gov't Opp'n at 6.)   Hasanoff is not a danger to any person or the community.

Courts also must consider the need to "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   18 U.S.C. § 3553(a)(6).   Hasanoff's co-defendant in this case, Wesam el-Hanafi, pled guilty in 2012 to the same charges that were brought against Hasanoff.   El-Hanafi was sentenced to a term of 180 months, and his sentence was recently reduced to time served because of serious underlying health conditions.   (ECF No. 252.)   Reducing Hasanoff's sentence, albeit for different reasons, is consistent with avoiding an unwarranted sentence disparity between these two defendants.

## CONCLUSION

For the foregoing reasons, Hasanoff's motion for compassionate release pursuant to Section 3582(c)(1)(A) is GRANTED.   Hasanoff shall be resentenced to time served and released from the custody of the BOP immediately.   Upon release, Hasanoff shall be placed on supervised release for three years and shall be subject to the mandatory conditions, standard conditions, and special conditions of supervised release stated in the original judgment and sentence in this case.

In addition, as requested by the Government (Gov't Opp'n at 21 n.4), Hasanoff shall

report to the Probation Office any and all electronic communications service accounts (as defined in 18 U.S.C. § 2510(15)) used for user communications, dissemination and/or storage of digital media files (*i.e.*, audio, video, images).   This includes, but is not limited to, email accounts, social media accounts, and cloud storage accounts.   Hasanoff shall provide each account identifier and password, and shall report the creation of new accounts, changes in identifiers and/or passwords, transfer, suspension and/or deletion of any account within 5 days of such action.   Failure to provide accurate account information may be grounds for revocation of release.   Hasanoff shall permit the Probation Office to access and search any account(s) using Hasanoff's credentials pursuant to this condition only when reasonable suspicion exists that Hasanoff has violated a condition of his supervision and that the account(s) to be searched contains evidence of this violation.   All searches are subject to prior notification and approval from the Court.   Failure to submit to such a search may be grounds for revocation of release.

SO ORDERED.

Dated: New York, New York
        October 27, 2020

_____
KIMBA M. WOOD
United States District Judge